[Civil No. 4389.   Filed January 19, 1942.]

[121 Pac. (2d) 423.]

RALPH V. MEAD and HOPE M. MEAD, His Wife; JOHN A. SIMPSON and GRACE P. SIMPSON, His Wife, Appellants, v. LOUIS G. HUMMEL, Appellee.

Mr. John W. Ross and Mr. Joseph H. Shifman, for Appellants.

Messrs. Hummel, Hummel & Wyatt, for Appellee.

LOCKWOOD, C. J.—Louis G. Hummel, called plaintiff, brought suit against Ralph V. Mead and

Hope M. Mead, his wife, John A. Simpson and Grace P. Simpson, his wife, and various other parties, to quiet the title to certain real estate in Pima County and to enjoin defendants from trespassing on said property. Defendants answered and set up, in substance, that they had a right of way over the property involved in the complaint as though it were a public street or highway, and prayed that the court declare it to be subject to use as such by defendants and the general public. The case was tried to the court sitting without a jury and it found as follows:

"1. That plaintiff is the owner in fee simple of the real property in plaintiff's complaint and hereinafter described, and that defendants, and none of them, have any right, estate, interest or title whatever in or to said real property;

"2. That all of the allegations of plaintiff's said complaint are true and plaintiff is entitled to relief in acccordance with the prayer thereof with the exception only that plaintiff has failed to prove, and he is therefore denied, any money damages by reason of defendants' acts of trespass upon said real property."

and rendered judgment accordingly.

We must assume of course that the trial court found every controverted issue of fact necessary to support the judgment in favor of plaintiff. Considered thus, the evidence shows the following facts: In 1922 Emma Hummel, the wife of plaintiff, acquired a tract of land situated on the northeast corner of Speedway and Country Club Road, in Pima County, Arizona. It was two hundred and sixty-four (264) feet in frontage on Speedway, and a sufficient amount on Country Club Road to make the entire area approximately ten acres. Just to the east of this property was what is known as Jones Addition. This had been regularly laid out with certain properly dedicated streets, one of them being Fairmount Avenue,

which was sixty feet in width, and ran in an easterly and westerly direction, abutting on the eastern line of plaintiff's property. Plaintiff had visited the property at the time it was acquired in 1922 and then noticed various auto tracks upon it, but nothing to indicate that Fairmount Avenue, in Jones Addition, was being used as a street through his property to Country Club Road. Nor did he thereafter have any knowledge such was the fact until sometime in 1940 when, for the first time, he revisited the property.

Some time in 1936, one C. B. Perkins, who was a realtor in Tucson, or Peter R. Kelly, who was Perkins' salesman, came to plaintiff and said he had a buyer for some of the land above referred to. After some discussion a price was agreed upon and plaintiff agreed to pay a commission if a sale was consummated. Some time thereafter Kelly took to plaintiff a written agreement of purchase and sale, describing the premises as follows: "N. ½ of parcel 2 of N. W. ¼ of N. W. ¼ Section 4, Township 13 South, Range 14 East G. & S. R. B. & M., Pima County, Arizona," and following immediately thereafter "N. E. Cor. Country Club & Fairmount Ave." It was the testimony of Kelly that these last words were on the contract at the time it was exhibited to, and signed by, Hummel. The latter, however, stated as follows:

"A. That is my signature, yes, I signed that. I doubt if that Country Club Road and Fairmount Avenue was on that when I signed it.

"Q. It has been changed, you think, perhaps?

"A. Yes, I think it has. I would say it was changed because there was no reference made—at least, I wouldn't refer to Fairmount Avenue, I would refer to a strip there. That is changed since."

It is admitted that Hummel himself changed the "N. W. ¼ of N. W. ¼" to read "S. W. ¼ of N. W. ¼" and "Township 13" to read "Township 14" and

added to the description the following language: "being 135 ft. on Country Club Road, beginning 1350 ft. N. of SW Cor. Sec. 4, Tp. 14 S, R 14 E," signed the contract and returned it to Kelly. This was the portion sold to the Simpsons. .

Practically the same situation arose in regard to the sale of another similar portion of plaintiff's ten acres to the Meads, with the exception there is no evidence that any of the documents executed by Hummel in connection with this sale ever referred to the property purchased by the Meads as being on the corner of Fairmount and Country Club Road. There was never at any time any direct dealings between Hummel and either the Simpsons or the Meads, all transactions being had through Kelly or Perkins. Nor is it contended by any witness that plaintiff at any time made any statement, direct or indirect, in regard to either of the properties being a corner lot. The only evidence which would indicate in the slightest degree that plaintiff ever had any idea that either property abutted on Fairmount Avenue or was being offered for sale as a corner lot is the notation on the Simpson contract, which Kelly says was there when plaintiff signed it, and which the latter denies.

The Meads and the Simpsons eventually secured deeds to the purchased premises, which described the property by metes and bounds, but contained no reference whatever to Fairmount Avenue or that either property was a corner lot. Thereafter they erected residences on their respective lots, fronting on the presumed projection of Fairmount Avenue, and other houses fronting in the same manner, which passed into the possession of other purchasers at some time before plaintiff notified them, in 1940, that they were trespassing on his property by using it as a highway. Thereafter this suit was begun.

It is admitted that the title to the property in question has been in plaintiff or his predecessor in interest, his wife, since 1922, and that it was never sold to either of defendants. Their claim is of a right of way only, to be used as a public street or highway, and it is based on the contention that when they purchased their properties it was represented to them by Hummel, through his agents Perkins and Kelly, that Fairmount Avenue was continued from the Jones Addition to Country Club Road as a public street or highway. If the evidence shows this to be true, then of course plaintiff is estopped from claiming, so far at least as defendants are concerned, that it is not a public highway, although under our law it is not legally one, for in Arizona public highways can only be established in a manner provided by statute, and not through user or prescription. *Champie* v. *Castle Hot Springs Co.*, 27 Ariz. 463, 233 Pac. 1107.

But is there evidence which would compel the conclusion that this was done? There is not a scintilla of evidence that plaintiff himself made any such representations, for he never dealt with either of defendants directly, either orally or in writing. There is no evidence that Perkins and/or Kelly were the agents of plaintiff for the purpose of selling the property. On the contrary, it appears that plaintiff never employed them but that they contacted defendants, and after showing them several pieces of property and finding that they preferred, if possible, to secure part of plaintiff's land, they then, for the first time, approached plaintiff, telling him that they had buyers for part of the property if terms could be agreed upon. Under such circumstances there can be no doubt that Perkins and Kelly were the agents of defendants rather than plaintiff in making the sale. Nor does the fact that after he was approached plaintiff said he would pay them a commission if the deal

was consummated alter that fact. It is true that Perkins and Kelly, doubtless acting in good faith on the appearance of the land in question, told defendants that Fairmount Avenue ran through to Country Club Road, but this is not binding upon plaintiff for there is no evidence he represented this to be the fact to Perkins or Kelly, or authorized them to make any representations whatever to defendants. Indeed, the only evidence which defendants seriously contend shows even ratification or estoppel of the statements of Perkins and/or Kelly, on the part of plaintiff, is the appearance of the words ''N. E. Cor. Country Club & Fairmount Ave.'' on the contract which was signed by plaintiff, and this, at most, would affect only the purchase by the Simpsons, for there is no evidence that any such language appeared on any document given to the Meads. If the trial court had found, or if the evidence conclusively indicated, that plaintiff signed the contract of sale when these words appeared thereon, it might be argued that he would be bound thereby. He, however, denies that they were there at the time he signed the instrument, and, although this was contradicted by Kelly, we must assume the trial court found plaintiff's version of the transaction to be true. Such being the case, there is nothing to show that plaintiff had any knowledge before the sale, directly or indirectly, that representations had been made to defendants that the properties which they purchased from him adjoined any extension of Fairmount Avenue or, indeed, any public highway except Country Club Road, and the trial court correctly found, as a matter of law, that plaintiff was entitled to have his title quieted to the premises involved, and to have defendants enjoined from using them in any manner.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.