545 P.2d 454

Allan J. NORVILLE and Alfena Norville, husband and wife, and Financial Associates, Inc., an Arizona Corporation, Appellants,

v.

Irving PALANT and Edythe Palant, husband and wife, First Realty & Investment Company, an Arizona Corporation, Lew S. McGinnis, and Credit Finance Company, an Arizona Corporation, Appellees.

No. 2 CA–CIV 1941.

Court of Appeals of Arizona, Division 2.

Jan. 27, 1976.

Rehearing Denied Feb. 11, 1976.

Review Denied Feb. 24, 1976.

Miller, Pitt & Feldman, P. C., by David J. Leonard, Tucson, for appellants.

Everett, Bury & Moeller, P. C., by Leonard Everett, Tucson, for appellees Palant and First Realty and Investment Co.

Rees, Mercaldo & Smith, P. C., by Paul G. Rees, Jr., Tucson, for appellees McGinnis and Credit Finance Co.

## OPINION

KRUCKER, Judge.

This is an appeal by cross-claimants Allan J. Norville and Financial Associates, Inc. (hereinafter collectively denominated "Norville") from a judgment rendered in favor of cross-claim defendants Edythe Palant and First Realty and Investment Co. (hereinafter "Palant"), and Lew S. McGinnis and Credit Finance Co. (hereinafter "McGinnis"). The trial court made findings of fact and conclusions of law, and after finding that there was no just reason for delay, specifically directed entry of judgment on the cross-claim. Rule 54(b), Rules of Civil Procedure, 16 A.R.S.

Taken in the light most favorable to sustaining the judgment, the facts material to this appeal are as follows. Allan J. Norville is the president of Financial Associates, Inc. Edythe Palant and Joan Zeller are brokers for First Realty and Investment Co.

John Kennedy, a resident of Minnesota, had been looking for investment property in Tucson for several years. Zeller worked with him closely toward this end.

Norville owned a 40-acre parcel of land on the southeast corner of Kolb Road and

Broadway in Tucson. In early 1970 Norville was having great difficulty meeting his mortgage payments on the many parcels of real property he owned in Tucson. To alleviate some of the financial pressure on him, Norville determined to sell the 40-acre parcel.

In April of 1970, Norville happened to encounter Palant in the elevator of the SAB Financial Center is Tucson. At that time they discussed Norville's intention to sell the 40-acre parcel. Palant invited Norville to her office, where he told her he wanted $60,000 for a 4-acre portion of the 40-acre parcel that was subject to a $36,000 mortgage in favor of William Pessin. At some point Norville offered to pay Palant a commission.

Several days later, Palant, who had noticed a postcard from Kennedy to · Zeller, asked Zeller if Palant could work on the sale of Norville's property to Kennedy if she continued to treat it as Zeller's listing. Palant had Zeller draw a diagram of the property and send it to Kennedy. On May 11, 1970, Palant spoke to Kennedy on the telephone. After her conversation with Kennedy, Palant called Norville and told him, "Allan, I'll have an offer for you for the property."

On May 14, 1970, Kennedy called Palant to tell her he was signing the form of offer Palant had prepared for him. Later the same day Palant called Norville and told him, "Allan, I've got your offer; it's on the way to me." Norville replied, "Edythe, the offer has changed considerably now." He stated that he had to net $19,000 for himself and that the prospective purchasers would have to make their own arrangements with Pessin, the mortgagee. Palant then called Pessin. Pessin was reluctant to allow the people from Minnesota to assume the mortgage but nonetheless agreed to meet with them when they came to Tucson.

After she talked to Pessin, Palant called McGinnis and told him she was perturbed because she had lost what had looked like a sure sale. McGinnis told her he had been negotiating with Norville for some time in an attempt to purchase all his properties. Palant next called Kennedy in Minnesota and told him complications had arisen. She told him she could not deliver the property under the terms of the offer, but that "someone [presumably McGinnis] could buy it in between." On May 16, 1970, Palant received Kennedy's signed offer in the mail and told him on the phone she would try to salvage the deal by having someone "come in between."

From May 16 to May 19, 1970, Norville and McGinnis discussed the proposed sale of the entire 40 acres. On May 19 McGinnis lowered the offer he had previously made. Angered, Norville rose to leave. McGinnis then made an offer on the "Holiday" portion of the 40 acres, but Norville rejected it. Finally, McGinnis expressed interest in the 4-acre parcel as to which Kennedy had made an offer. Norville agreed to sell his equity in that parcel for $7,500 cash, to be paid the same day, and McGinnis agreed to make his own arrangement with Pessin.

McGinnis then went to Palant's office, from .which Palant called Pessin, the mortgagee, to set up a meeting between Pessin and McGinnis. Pessin agreed to accept $10,000 cash from McGinnis and retain a $26,000 first mortgage. Palant then phoned Kennedy, who telegraphed an authorization for Palant to purchase the 4-acre parcel for $60,000 from McGinnis.

After the sale had been consummated, Kennedy sued Palant, Zeller, McGinnis and Norville. He alleged in substance that Palant had materially misrepresented the character of the 4-acre parcel and that Palant and McGinnis had conspired to have Kennedy pay $60,000 for the parcel when it could have been purchased for $43,500.-00. Norville cross-claimed against Palant and McGinnis, alleging *inter alia* that Palant and McGinnis had conspired to breach Palant's fiduciary duty to disclose to Norville all facts material to the negotiations and to refrain from representing conflicting interests. Kennedy dismissed or settled

with all the parties. At the end of the trial of Norville's cross-claim, the trial court made the following findings of fact and conclusions of law:

"Findings of Fact

1. There was no broker-principal relationship between Norville and Mrs. Palant.

2. Mrs. Palant informed Norville on May 14, 1970 that Kennedy had offered to purchase the five acres for $60,000.00.

3. Norville rejected Kennedy's offer to purchase as communicated to him by Mrs. Palant.

4. On May 14, 1970, Mrs. Palant told McGinnis that she failed to make a sale of the five acres, but did not disclose or discuss with McGinnis the identity of Kennedy as the offeror, and, furthermore, did not discuss or disclose any of the terms of Kennedy's offer whatsoever.

5. Mrs. Palant did not mention, discuss or disclose the particulars of the Kennedy offer to purchase the five acres to McGinnis prior to McGinnis' purchase of the five acres on May 19, 1970.

6. Mrs. Palant first learned of McGinnis' intent to purchase the five acres after McGinnis had agreed to the purchase with Norville on May 19, 1970.

7. Prior to his purchase of the five acres, McGinnis did not know of the Kennedy offer or its particulars.

8. McGinnis and Norville reached a mutually satisfactory agreement for the sale and purchase of the five acres on May 19, 1970.

9. Mrs. Palant never withheld from Norville any material facts concerning the offer of Kennedy to purchase the five acres.

CONCLUSIONS OF LAW

1. There was no fiduciary relationship between Mrs. Palant and Norville.

2. Mrs. Palant practiced no fraud upon Norville.

3. Mrs. Palant was not negligent in any way.

4. Mrs. Palant and McGinnis together practiced no fraud upon Norville.

5. McGinnis did not interfere with the formation of a contract between Norville and Kennedy.

6. Norville is entitled to no relief by his cross-claim.

7. The cross-defendants are entitled to have judgment against the cross-claimant Norville for their costs and disbursements expended herein.

8. There is no just reason for delay and the Court expressly directs the entry of Judgment forthwith."

Norville now contends the "finding" that no broker-principal relationship existed between Palant and Norville was incorrect. He further contends that this error requires reversal. Norville apparently concedes that if the challenged "finding" was sustainable, the judgment must be affirmed.

We recently discussed the fiduciary obligations of a broker to his principal in *Vivian Arnold Realty Co. v. McCormick*, 19 Ariz.App. 289, 506 P.2d 1074 (1973). We noted:

"The duties of a real estate broker as agent for a seller are well established. A real estate agent owes a duty of utmost good faith and loyalty to the principal, and one employed to sell property has the specific duty of exercising reasonable due care and diligence to effect a sale to the best advantage of the principal—that is, on the best terms and at the best price possible. . . . He is also under a duty to disclose to his client information he possesses pertaining to the transaction in question. . . ." 19 Ariz.App. at 293–94, 506 P.2d at 1078.

■ These fiduciary obligations are not imposed, however, unless a broker-principal relationship is established. *See, In re McDonnell's Estate*, 65 Ariz. 248, 179 P.2d 238 (1947). We hold from our examination of the record that the trial court was

correct in concluding on the basis of conflicting evidence that there was no broker-principal relationship between Palant and Norville. Long before the instant controversy arose, appellee First Realty and Investment Co. was acting as broker for Kennedy through Zeller. From the start Zeller, and then Palant, acted consistently in furtherance of Kennedy's desire to purchase land in Tucson. In our view, Palant's dealings with Kennedy merely constituted a continuation of a pre-existing broker-principal relationship. The existence of this continuing broker-principal relationship between Kennedy and First Realty and Investment Co., through Zeller and then Palant, militates strongly against the proposition that a broker-principal relationship was established between Palant and Norville. Kennedy did not consent to Palant's representing Norville and such lack of consent is evidence that Palant was not Norville's broker. *See, Warren v. Mangels Realty,* 23 Ariz.App. 318, 533 P.2d 78 (1975).

*Mead v. Hummel,* 58 Ariz. 462, 121 P.2d 423 (1942) is also applicable here. The issue there was whether plaintiff, who was the seller of certain property to defendants, could be charged with statements made by Perkins and Kelly to defendants that the property abutted a public easement. Resolution of this issue turned on whether Perkins and Kelly were plaintiff's agents. The court stated:

"There is no evidence that Perkins and/or Kelly were the agents of plaintiff for the purpose of selling the property. On the contrary, it appears that plaintiff never employed them but that they contacted defendants, and after showing them several pieces of property and finding that they preferred, if possible, to secure part of plaintiff's land, they then, for the first time, approached plaintiff, telling him that they had buyers for part of the property if terms could be agreed upon. Under such circumstances there can be no doubt that Perkins and Kelly were the agents of defendants rather than plaintiff in making the sale. Nor does the fact that after he was approached plaintiff said he would pay them a commission if the deal was consummated alter that fact." 58 Ariz. at 467–68, 121 P.2d at 425.

As in *Mead,* First Realty and Investment Co. was in contact with Kennedy before it began its dealings with Norville through Palant. We think it is clear in this case that Palant was only Kennedy's broker. Norville's offer to pay Palant a commission, as in *Mead,* does not change this result.

Further, as stated in 12 C.J.S. Brokers § 12:

". . . the mere fact that a broker asks and obtains from the owner of land the price at which he is willing to sell it does not of itself establish the relation of principal and agent between them." 12 C.J.S. at 33.

We view the relations between Palant and Norville as arm's-length contacts, albeit cordial ones, between a prospective seller and the broker for a prospective purchaser. The trial court could reasonably have concluded that nothing would have impelled Norville's to place his trust in Palant and "relax the care and vigilance he would ordinarily exercise." *In re McDonnell's Estate,* supra, 65 Ariz. at 253, 179 P.2d at 241. The trial court's conclusion that there was no broker-principal relationship between Norville and Palant was correct.

As to McGinnis, appellants have conceded in their reply brief that "if Palant had no fiduciary obligations to Norville, the evidence was sufficiently in conflict to justify a conclusion that McGinnis' conduct was not actionable."

The judgment in favor of appellees is affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.