704 P.2d 814

**William G. MUSSELMAN and Birch C. Musselman, Plaintiffs/Appellants,**

v.

**SOUTHWINDS REALTY, INC., a corporation, and Trudy Maury, Defendants/Appellees.**

No. 2 CA–CIV 5123.

Court of Appeals of Arizona, Division 2.

March 21, 1985.

Review Denied June 25, 1985.

Mesch, Clark & Rothschild, P.C. by Douglas H. Clark, Jr., Tucson, for plaintiffs/appellants.

Murphy, Clausen, Goering, Roberts & Holt by Howard T. Roberts, Jr., Tucson, for defendants/appellees.

OPINION

BIRDSALL, Chief Judge.

This appeal concerns the fiduciary duty of a real estate broker to her principal. We find certain responsibilities are not mandated as a matter of law and we affirm the verdict and judgment of the court below. The facts follow.

Appellee, representing herself and her brokerage firm as specialists in northwestern Tucson property, contacted appellants, owners of roughly ten acres of undeveloped land in the area, for the purpose of selling the property for them. Appellants, not Arizona residents, investigated the value of their property, traveling to Tucson and talking to several authorities in the area. Appellee was one of several realtors and brokers who had recently expressed an interest in the property. Appellants determined that they would sell the land for $300,000 net to them, meaning they would receive $300,000 after any closing and commission costs had been paid.

Appellee did find a potential purchaser and a contract resulted, the buyer was to pay the appellee's commission and appellants would net the asked price. The contract was entered into before June 1, 1979, and less than six months after appellants had established with appellee their asking price. The contract to sell was contingent on several factors, however, and by late 1979 appeared to be falling through. Appellants seemed very anxious to consummate a sale and appellee suggested a "backup" contract with a second buyer, who would perform if the first contract did not result in a sale. A backup buyer was located, and a second contract entered into on May 27, 1980, with closing scheduled for September 1, 1980. The second contract was for the same $300,000 and with buyer paying appellee's commission.

Sometime after this contract was made but before the scheduled closing, appellee brokered the sale of the property from the buyer to a third party, with the buyer/seller paying her commission. The agreed upon price of $479,000 was later lowered to $431,000. Yet a third sale, not involving either of the present parties, was then agreed to for a price of $680,000.

Also prior to closing the first deal, appellants were contacted by a Tucson realtor who was unaware of the contract for sale and inquired as to availability of the property. From this call, appellants were apprised that the price for which they had contracted to sell was grossly under prices being obtained for comparable land in that part of the city, which was undergoing a remarkable period of growth and appreciation in value. Appellants refused to perform on the contract and did so only after litigation. They then brought this action against appellee, grounding their claims in theories of agency/contract breach, tort, and fraudulent misrepresentation. The count of fraud was directed out in the court below, a jury returned a verdict for appellee, and judgment and this appeal followed.

Three issues are raised on appeal. The trial judge ruled as a matter of law that an agency relationship of broker-principal was established between the parties and neither side contests this ruling. Appellants urge that we find first that the trial court erred in failing to direct a verdict or declare judgment notwithstanding the verdict on the liability of appellee; second, that the trial judge erred in refusing appellants' instructions and substituting the court's own; third, that it was error to direct a verdict against appellants on the third count.

Appellants first argue that the trial judge was obligated on the facts of the case to direct a verdict or grant judgment notwithstanding the verdict for appellants as to the broker's liability. This would require that the court find as a matter of law that she had breached her duty to

appellants and that there are no facts before the court which could lead to another conclusion. We disagree. While an agency relationship imposes on an agent the duty of utmost good faith, integrity, honesty, and loyalty in her transactions with the principal, it yet remains a question for the finder of fact to determine whether such duty was breached.

■ Appellants would have us hold that as a matter of law an agent-broker is obligated to obtain the highest price possible for the property being sold. This we decline to do. While such language has been used by this court and other Arizona courts, we have examined the cases and do not find that such was meant to be held as law in Arizona. The first use of the language appears in *Vivian Arnold Realty Co. v. McCormick*, 19 Ariz.App. 289, 506 P.2d 1074 (1973), and the facts of that case did not concern the price obtained by the agent but instead whether the agent breached a duty to inform the vendor that the buyer stood ready to close. Thus, language concerning the highest price is mere dictum not related to the holding of the case. The Arizona case which it purports to cite for that proposition is *Haymes v. Rogers*, 70 Ariz. 257, 219 P.2d 339, modified, 70 Ariz. 408, 222 P.2d 789 (1950), but no language concerning a duty to obtain the highest price appears in that opinion. Indeed, *Haymes* cites an Alabama case for the following,

> " 'The law requires that a real estate agent, employed to sell land, must act in entire good faith and in the interest of his employer. [citation omitted] To this end he must exact from the purchaser the price, the terms, and conditions of sale which his employer has fixed.' 23 Am. & Eng.Ency.Law (2d Ed.) p. 902." 70 Ariz. 260, 219 P.2d 339, citing *Alford v. Creagh*, 7 Ala.App. 358, 62 So. 254.

Subsequent courts have quoted the *McCormick* language, but have not dealt with a case where a broker obtains the price specifically asked by the vendor for the property. See *Marmis v. Solot Co.*, 117 Ariz. 499, 573 P.2d 899 (App.1977); *Morley v. J. Pagel Realty and Insurance*, 27 Ariz.App. 62, 550 P.2d 1104 (1976); *Norville v. Palant*, 25 Ariz.App. 606, 545 P.2d 454 (1976). Nor can we find any other authority for the proposition that the broker is obligated as a matter of law to obtain the highest price possible for the property. See M. Romero, Theories of Real Estate Broker Liability: Arizona's Emerging Malpractice Doctrine, 20 Ariz.L. Rev. 767 (1978).

There is a variety of reasons why a seller would be willing to sell property for a price under the optimum price available. Among these are tax considerations, quicker liquidity, concession from the purchaser, or a simple wish to expedite a sale. The facts of this case were considered by the jury in arriving at their determination of whether a breach had occurred and they may have found, on the facts presented, that the desirability of obtaining an immediate backup offer was preferable to re-listing and advertising the property at a higher price, particularly as the original contract had not been rescinded at the time the backup was entered into.

■ More troublesome to the appellants was an alleged duty to inform the vendor of any changes in the value of the land which might influence his decision to sell. Again, this becomes a fact question as to whether the actions of this particular agent breached overall duties of good faith, integrity, honesty, and loyalty. An examination of the cases annotated in Annot., 33 A.L.R.4th 944 (1984), "Real Estate Broker's or Agent's Misrepresentation to, or Failure to Inform Vendor Regarding Value of Vendor's Real Property," convinces us that while such a duty may exist as a sub-duty of those duties previously mentioned, a breach of it depends upon the facts of the case, and the jury is entitled to look at the agent's knowledge and any special arrangements or instructions between the principal and agent. Again, we find there were sufficient facts in this case upon which a properly instructed jury could find no breach. There was no error in failing to direct a verdict or grant judgment notwithstanding

the verdict for appellants on the issue of liability.

All of the foregoing relative to findings of fact by a jury presumes a properly instructed jury. Appellants argue that if it was proper to send the question of liability to the jury, they are entitled to reversal at any rate because the judge failed to properly instruct the jury. Appellants submitted the following instructions:

"# 3. The defendants owed plaintiffs a duty to use their best efforts to obtain the highest and best price for the property.

# 9. An agent is under a duty to her principal to exercise reasonable care to disclose to her principal, before a transaction is completed, matters known to her that the other is entitled to know because of the fiduciary relationship of trust and confidence between them.

# 10. An agent is under a duty to her principal to exercise reasonable care to disclose to her principal before a transaction is completed, material known to her which, if known to the principal, might influence the principal's decision on the subject matter of the agreement."

The court instructed the jury as to the duty as follows:

"A real estate agent for a seller owes a duty of utmost good faith and loyalty to the seller, and has the specific duty of exercising reasonable due care and diligence to effect a sale to the best advantage of the seller. The agent is also under a duty to disclose to his client information he possesses pertaining to the transaction in question, or which affect the sellers' interest."

 As we have already held, there is no duty to obtain the highest and best price for a property, except a statutory duty applicable in the sale of estate property, when the agent in fact obtains the price asked by the sellers. Therefore, requested instruction number three is an erroneous statement of the law. We find numbers nine and ten are redundant. The subject matter in contention is adequately covered in the instruction given. The appellants'

principal objection to the court's instruction is the omission of the word "might," which appears in requested instruction ten. The authorities cited by the appellants do not support this argument. The only language in *Mason v. Bulleri*, 25 Ariz.App. 357, 543 P.2d 478 (1975) even remotely pertaining to the subject is the following:

"it is the broker's duty to deal with his principal, the seller, in the utmost good faith and bring to the seller's attention such information as the broker might have concerning the buyer's financial inability to complete the purchase. The broker may not withhold from the seller any material information which he might have on this subject. Here the broker prepared and presented to the defendants a contract which arguably provided for the retention by the defendants of a security interest in the property for the entire balance due, without advising defendants that the buyers had represented that they would be financially unable to complete the purchase if a security interest were in fact retained by the sellers. Under these circumstances, the brokers' failure to disclose constituted a serious breach of their fiduciary duty to the sellers." 25 Ariz.App. at 359–60, 543 P.2d at 480–81, citations omitted.

Clearly the use of the word "might" is with reference to information which the agent *might* have, not to information which *might* influence the principal's decision. *Kimmell v. Clark*, 21 Ariz.App. 455, 520 P.2d 851 (1974) involves only the specific rule that a real estate broker is under a fiduciary duty to disclose that the broker or a close relative is the purchaser.

There are other Arizona cases discussing the duty of a real estate broker (agent) to disclose information. In *Jennings v. Lee*, 105 Ariz. 167, 461 P.2d 161 (1969) our supreme court used the language, "A broker is under a duty to disclose to his client information which he possesses pertaining to the transaction in question." 105 Ariz. at 173, 461 P.2d at 167.

In *Walston & Co. v. Miller*, 100 Ariz. 48, 410 P.2d 658 (1966) our supreme court con-

sidered the duty of a commodity broker to his customer. The court approved the legal proposition that when a broker serves as his customer's agent, he is a fiduciary and owes his principal a duty to communicate *certain* information to him. The court noted that this duty is outlined in the Restatement (Second) of Agency § 381 (1958):

"Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person."

See also *Morley v. J. Pagel Realty & Insurance,* supra, quoting *Jennings v. Lee,* supra, and *Haymes v. Rogers,* supra. And see also *Vivian Arnold Realty Co. v. McCormick,* supra, quoting *Haymes* and *Jennings* and citing 12 Am.Jur.2d Brokers § 96 (1964). It is true that both 12 C.J.S. Brokers § 57 (1980), and 12 Am.Jur.2d, Brokers § 89 (1964), use the word "might" in the exact context employed in requested instruction ten. However in two recognized treatises on agency, the word is not employed. W. Seavey, Law of Agency, § 143, p. 238 (1964), states, concerning an agent's duty to give information:

"An agent who acquires information relevant to matters within his province and of which he should know the principal would want to know, has a duty to reveal it, unless it was received confidentially."

F. Mechem, 1 Law of Agency § 1353, pp. 993–94 (2d ed. 1914), "Duty of agent to give principal notice of facts material to agency," says:

"It is the duty of the agent to give his principal reasonable and timely notice of every fact relating to the subject-matter of the agency, coming to the knowledge of the agent while acting as such, and which it may fairly be deemed material for the principal to know for the protection or preservation of his interests."

■ To require the agent to give the principal notice of any conceivable information which might possibly influence the principal would create an oppressive burden on the agent. Such a rule would lead to the consideration of information extraneous to the issues in the case. It would permit speculation and could easily lead to unwarranted results. In the instant case, the trial court admitted all the evidence concerning the appreciation in land values in northwest Tucson. This is the information which the appellants contend the appellee should have related to them. Although we do not have a transcript of the closing arguments, we conclude from a reading of the entire appellate record that the fact of this appreciation was the focal point of those arguments. The court's instruction surely permitted counsel to argue that the increased value of the property pertained to the transaction and affected the sellers' interest. The jury was instructed on the burden of proof. They were told that the plaintiff had the burden to prove the defendant had breached a duty owed plaintiff and they must be persuaded that this was more probably true than not. We find no error in the refusal of the instructions and further find that the jury was properly instructed as to the agent's duty.

■ Appellants' final issue concerns the granting of appellee's motion for a directed verdict on Count 3. The appellants claim that at the time the backup contract was being negotiated by appellee, they inquired of her whether the price was reasonable. It was their testimony that she replied "[the price was] still a good price," "she said we were getting a good value," "everything seemed to be fine, still a good price." The appellee denied that she was asked and that she gave these responses. Nevertheless the jury could have found that these representations were made. The apparent reason for granting the directed verdict was that representations as to value will not support a claim for fraud. *Frazier v. Southwest Savings & Loan Association,* 134 Ariz. 12, 653 P.2d 362 (App. 1982). Even assuming, arguendo, that representations as to value could create liability when made by a real estate agent to her

principal, the jury could consider this evidence in deciding whether the appellee breached her fiduciary duty to the appellants to disclose information. Any error in directing the verdict was harmless in view of the submission of the case to the jury under the instructions given.

Affirmed.

HOWARD and HATHAWAY, JJ., concur.