748 P.2d 1209

**Meredith HALDIMAN, an individual, Plaintiff-Appellant, Cross Appellee,**

v.

**GOSNELL DEVELOPMENT CORPORATION, an Arizona corporation; and Gael Boden, Defendants-Appellees, Cross Appellants.**

No. 1 CA–CIV 8804.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 20, 1987.

Review Denied Feb. 17, 1988.

Affirmed in part, reversed and remanded in part.

Berry & Martori by Frederick C. Berry, Jr., Phoenix, for plaintiff-appellant/cross appellee.

Tower, Byrne & Beaugureau, P.C. by David L. Beaugureau, and Amy Schwartz, Phoenix, for defendants-appellees/cross appellants.

## OPINION

GREER, Judge.

The primary issue presented in this appeal is whether a real estate agent who is

an employee of the seller owes a duty of full and frank disclosure to the buyer in a real estate transaction. A secondary issue is whether an award of attorneys' fees pursuant to A.R.S. § 12–341.01 was proper.

Since this is an appeal from a summary judgment, we view the facts most favorably to the appellant. The appellant, Meredith Haldiman, entered into a contract on August 5, 1982, to purchase a townhome, which was to be constructed by appellee Gosnell Development Corporation (Gosnell). The purchase contract, entitled an "Agreement to Purchase" (purchase agreement), was prepared by appellee Gael Boden, an employee of Gosnell and a licensed real estate salesman. Haldiman was not represented by her own real estate agent, nor did she obtain outside legal advice.

Boden prepared the purchase agreement on a Gosnell form, by typing in the blanks, including the purchaser's name, the development, the home site, the plan, options and price. The total purchase agreement consisted of two pages. It provided, *inter alia*:

5. If Purchaser fails to comply in timely fashion with all terms and conditions of this Agreement or otherwise should fail to complete the Purchase, GDC [Gosnell Development Corporation] may elect to (a) terminate this Agreement by delivery of written notice to Purchaser and may retain any monies received and/or collect monies due, including but not limited to earnest monies and amounts due for options incorporated into the Residence, as liquidated and agreed damages, or (b) seek specific performance, and/or (c) pursue any other right or remedy provided by law.

\* \* \*

8. This Agreement and any subsequent executed agreements constitute the Agreement between the parties hereto and neither shall be bound by any understanding, negotiation, discussion, agreement, promise or representation expressed or implied, which is not set forth herein or in subsequent agreements executed by both parties.

\* \* \*

12. Purchaser acknowledges having read and understood each of foregoing terms and conditions. *Purchaser should not execute this Agreement if any of the provisions are unclear or objectionable to Purchaser.*

Pursuant to the agreement, Haldiman paid a $2,000 earnest money deposit.

Boden subsequently prepared an additional agreement, an "Option/Change Order Agreement" (option agreement) which was executed on August 27, 1982. This second agreement set forth the options that Haldiman chose for her new home and their prices. Pursuant to that agreement, she paid a deposit of $1,300 for the options.

Boden signed both agreements as a "marketing representative" of Gosnell. Haldiman was provided copies of the two agreements. Boden apparently made no explanation of the terms of the purchase agreement at the time of execution. He did not, for example, explain that pursuant to its terms, Haldiman's deposit would not be refunded if she was unable to close escrow because she did not qualify for financing or was unable to sell her former home. Neither did he suggest that the purchase agreement be conditioned upon Haldiman's ability to obtain reasonable financing or to sell her existing home.

Close of escrow was set for January, 1983, when it was anticipated that construction of the unit would be completed. Gosnell was ready and able to close escrow at that time, but Haldiman was unable to secure financing because she had not yet sold her former home. Gosnell extended her a four and one-half month grace period within which to sell her home. By May, 1983, she still had not sold her home and was unable to close escrow. On May 6, 1983, Gosnell notified Haldiman by letter that it was terminating the purchase agreement because of Haldiman's failure to comply with the terms and conditions of the agreement and close escrow in a timely fashion. She was given a final deadline of May 16, 1983. Haldiman failed to close escrow, and pursuant to the purchase

588

agreement, Gosnell terminated the agreement and retained both the $2,000 earnest money deposit and $1,300 option deposit Haldiman had paid.

Haldiman filed a complaint against Gosnell and Gael Boden alleging that Gosnell wrongfully retained the total of $3,300 she had deposited with Gosnell (Count I) and that Gael Boden represented her in the transaction and had breached his duty to give her full and frank advice and to treat her fairly (Count II). Count II was resolved in favor of Gosnell and Boden upon their motion for summary judgment, and Count I was resolved by arbitration in Gosnell's favor. On appeal, Haldiman claims that the trial court improperly granted the defendants' motion for summary judgment and that the court should have held, as a matter of law, that Boden owed Haldiman a duty of full and frank disclosure.

Haldiman also claims that the trial court improperly awarded the appellees attorneys' fees pursuant to A.R.S. § 12–341.01. She argues that Count II of the complaint did not arise from a contract, and therefore attorneys' fees pursuant to that statutory provision were improper. The appellees argue on cross appeal that the trial court improperly reduced the amount of attorneys' fees awarded. We affirm the trial court's granting of summary judgment and reverse its award of attorney fees.

### WAS A DUTY OWED?

 Real estate salemen and brokers owe a duty of good faith and loyalty to their principal. *Vivian Arnold Realty Co. v. McCormick*, 19 Ariz.App. 289, 293, 506 P.2d 1074 (1973). They must exercise reasonable due care and diligence to effect a sale to the principal's best advantage. *Id.; Haymes v. Rogers*, 70 Ariz. 257, 219 P.2d 339 (1950). They must also disclose to their clients information they possess pertaining to the transaction involved. *Jennings v. Lee*, 105 Ariz. 167, 461 P.2d 161 (1969).

 In *Morley v. J. Pagel Realty & Insurance*, 27 Ariz.App. 62, 550 P.2d 1104 (1976), Division Two of this court extended this duty one step further. The question

before the court was the extent of a real estate broker's duty to his client and specifically, whether the broker should have advised his clients, the sellers, to require security for the buyer's performance. The court stated:

In the case at bench, appellants [the sellers] seek to hold appellees [the real estate broker] liable for failing to inform them that the Haydens' offer contemplated no security and that a mortgage should be required. Although this information might be beyond the average person, it is common knowledge in the real estate business. We think that as part of appellees' duty to effect a sale for appellants on the best terms possible and to disclose to them all the information they possess that pertained to the prospective transaction, appellees were bound to inform appellants that they should require security for the Haydens' performance.

*Id.* at 65, 550 P.2d at 1107. The court specifically stated, however, that its holding was a narrow one and should not be extended beyond the facts before it. *Id.* at 65–66, 550 P.2d at 1107–08. The court then stated:

It [the holding] is reinforced by Art. 26, § 1 of the Arizona Constitution. Having achieved, by virtue of this provision, the right to prepare any and all instruments incidental to the sale of real property, including promissory notes, *real estate brokers and salesmen also bear the responsibility and duty of explaining to the persons involved the implications of these documents.*

*Id.* at 66, 550 P.2d at 1108 (emphasis added). Haldiman argues that this last phrase suggests that the court was opening the door to an increased duty of salesmen *to persons other than their principal or client.* She urges this court to adopt a broad interpretation of *Morley.* For the reasons stated below, however, we decline to do so.

We first point out that the *Morley* court specifically stated that its holding was narrow and should not be extended beyond the facts before it. From this very clear state-

ment, we can only conclude that the court meant just that. Its subsequent statement is dicta at best, and therefore not controlling as precedent. *Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 638 P.2d 1324 (1981), *appeal dismissed*, 457 U.S. 1101, 102 S.Ct. 2897, 73 L.Ed.2d 1310, *rehearing denied*, 459 U.S. 899, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982).

The Arizona Supreme Court, when subsequently presented with a similar question to that in *Morley*, refused to impose a duty of disclosure on a real estate agent who was not working for the seller. *Buffington v. Haas*, 124 Ariz. 36, 601 P.2d 1320 (1979). That court concluded:

> there was not an agency relationship between appellant Haas [the real estate salesman] and appellee Buffington. Haas had no obligation to inform the appellee that under the contract she did not retain a security interest in her property. *Morley v. J. Pagel Realty & Ins.*, 27 Ariz.App. 62, 550 P.2d 1104 (1976). *He also had no obligation to inform her as to the contents of the escrow instructions.*

*Id.* at 38; 601 P.2d at 1322 (emphasis added); *see also, Warren v. Mangels Realty*, 23 Ariz.App. 318, 533 P.2d 78 (1975). A broker has none of the fiduciary obligations outlined in *Vivian Arnold Realty v. McCormick*, in the absence of a broker-principal relationship. *Id.; see also Norville v. Palant*, 25 Ariz.App. 606, 545 P.2d 454 (App.1976).

Haldiman nevertheless suggests that this court should impose a duty on real estate agents to explain the implication of real estate documents even in the absence of an agency relationship. She suggests that this duty would be in the public's best interest, and that the court could ensure that *all* parties to a real estate transaction were informed, thereby reducing litigation involving mistake, misrepresentation and misunderstanding in real estate transactions. Although certainly a laudable goal, this court cannot simply create a legal duty because it might reduce litigation in the future. Haldiman does not expressly argue that Boden was her agent, although

she does state in her affidavit that Boden represented her in connection with the real estate transaction and gave her real estate advice. As a matter of law, however, Boden could not have been Halidman's agent.

█ Part of Boden's job was to write purchase contracts for potential Gosnell home purchasers, which is exactly what he did for Haldiman. This brief relationship now forms the basis of Haldiman's claim that he represented her and gave her real estate advice in the transaction. Haldiman's belief that Boden represented her, or was in essence her agent, does not, however, make him her agent. *See, e.g., Warren v. Mangels Realty*, 23 Ariz.App. 318, 321, 533 P.2d 78, 81 (1975) ("Warren's mental characterization of Mangels as his 'agent' could not by some magical process convert Mangels into one"). The facts are clear, despite Haldiman's belief and claim, that Boden was an employee of Gosnell and represented Gosnell only. An agent may not, in the absence of the principal's consent, act on behalf of an adverse party. *Valley Nat'l Bank v. Milmoe*, 74 Ariz. 290, 296, 248 P.2d 740, 744 (1952). Haldiman has not presented any evidence, or even alleged, that Gosnell gave Boden permission to represent Haldiman in the transaction. Boden, on the other hand, claims he worked exclusively for Gosnell and at no time represented or worked for Haldiman. Accordingly, Boden only represented Gosnell and could not have been Haldiman's agent.

█ Haldiman also argues that Boden is liable because he was negligent for failing to adhere to the standards of his profession, citing *Darner Motor Sales, Inc. v. Universal Underwriters Insur. Co.*, 140 Ariz. 383, 682 P.2d 388 (1984). *Darner*, however, involved an insurance agent who failed to explain the implications of an insurance policy *to his client.* The *Darner* court phrased the issue precisely: "What duty does a licensed insurance agent *owe to a client or customer?*" 140 Ariz. at 397, 682 P.2d at 402 (emphasis added). Other cases, both prior to and subsequent to *Darner* have similarly involved professionals who failed to adhere to the stan-

dards of their profession when dealing with their clients. In *Rossell v. Volkswagen of America*, 147 Ariz. 160, 166, 709 P.2d 517, 523 (1985), the Arizona Supreme Court summarized these cases and the nature of the duty they imposed:

> Volkswagen argues that case law already recognizes that in negligent design cases a manufacturer is not liable absent a showing that he failed to conform to the standard of care in design followed by other manufacturers. We do not agree. *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388 (1984); *Boyce v. Brown*, 51 Ariz. 416, 77 P.2d 455 (1938); and *Riedisser v. Nelson*, 111 Ariz. 542, 534 P.2d 1052 (1975), are, for instance, cases involving *professionals (insurance broker and physicians) sued by their clients or patients*. *National Housing Industries, Inc. v. E.L. Jones Development Co.*, 118 Ariz. 374, 576 P.2d 1374 (App.1978) involves the liability of a professional engineer to the assignee of its client, a developer.... *They do involve, instead, the liability of professionals who generally work in close relationship with their clients or patients.* (Emphasis added).

In light of the foregoing, Boden did not have a broker/client relationship with Haldiman, and thus did not breach a duty to uphold real estate professional standards. *Cf. Darner, supra.* Haldiman has no cause of action for Boden's failure to suggest that the purchase contract be conditioned upon financing and selling her home, or his failure to explain that she could not recover her deposits if she failed to close escrow for any reason.

## ATTORNEYS' FEES

■ Haldiman claims that the trial court improperly awarded appellees their attorneys' fees pursuant to A.R.S. § 12–341.01(A). That section grants to the trial court discretion to award attorneys' fees to the prevailing party in an action "arising out of a contract." Although Haldiman concedes that a contract was involved, she contends that the essence of

her claim is real estate malpractice, a tort action. Boden claims the action arose out of the contract with Gosnell. We agree with Haldiman and hold that the trial court improperly awarded attorney's fees.

In *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982), the Arizona Supreme Court decided one of the leading cases addressing the attorneys' fees issue. *Sparks* involved a successful claim of breach of contract and bad faith (tort) against an insurer. The court first noted:

> The fact that the two legal theories are intertwined does not preclude recovery of attorneys' fees under § 12–341.01(A) as long as the cause of action in tort could not exist *but for* the breach of the contract.

*Id.* at 543, 647 P.2d at 1141 (emphasis in original).

The court then turned its attention to the question of whether the torts of bad faith and misrepresentation arose out of a contract. Quoting *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981), the court pointed out that a legal duty was implied in an insurance contract, requiring insurance companies to act in good faith in resolving insureds' claims. The *Sparks* court concluded:

> Clearly, the tort of bad faith cannot be committed absent the existence of an insurance contract and a breach thereof. Because the existence of the tort is intrinsically related to the contract, we conclude that an action alleging insurer's bad faith is one 'arising out of a contract' within the meaning of § 12–341.01(A).

132 Ariz. at 544, 647 P.2d at 1142. With respect to the misrepresentation claim, however, the court stated that the claim was "mainly in tort and its existence does not depend upon a breach of the contract of insurance." *Id.* The court concluded that the tort "would not involve a breach of the actual contract; therefore, it would not be an action arising from a contract." *Id.*

More recently, in *Lewin v. Miller Wagner & Co.*, 151 Ariz. 29, 725 P.2d 736 (App.1986), this court held that attorneys'

fees could not be awarded pursuant to A.R. S. § 12–341.01 in a malpractice action brought against an accountant. The court first noted that a contract to perform accounting services was in effect between the parties. The court framed the question as follows:

> Whether a contract relationship that merely gives rise to a legally imposed standard of care against which subsequent events operate, provides a sufficient nexus between the failure to meet the standard of care and the contract so that it can be said the matter arose out of the contract and thus falls within the language of A.R.S. § 12–341.01(A).

*Id.* at 35, 725 P.2d at 742. After an analysis of *Sparks* and several out of state cases discussing the nature of the professional contractual relationship the court concluded:

> While a contractual relationship may give rise to a duty to perform in accordance with a certain standard of care, this legally imposed duty exists separate and apart from the contract giving rise to the duty. The failure to comply with this standard of care results in a breach of the legal duty imposed and is not an action "arising out of a contract" under A.R.S. § 12–341.01(A).

*Id.* at 36, 725 P.2d at 743. *See also, Marcus v. Fox,* 150 Ariz. 333, 723 P.2d 682 (1986); *Cauble v. Osselaer,* 150 Ariz. 256, 722 P.2d 983 (App.1986); *Western Technologies, Inc. v. Sverdrup & Parcel, Inc.,* 154 Ariz. 1, 8–9, 739 P.2d 1318, 1325–26 (App. 1986). The court also based its conclusion on public policy grounds that attorneys' fees are not generally awarded in tort actions because of the chilling effects. *Lewin, supra,* at 36–37, 725 P.2d at 743–44. We believe that the approach adopted in *Sparks* (misrepresentation claim) and *Lewin* is the correct one.

Haldiman alleged that Boden owed her a duty of full and frank disclosure because he was a real estate salesperson and she was the buyer. This is analagous to the duty in *Western Technologies* not to speak negligently, injuriously and falsely, and the tort action for accounting malpractice in *Lewin.* It is implicit in Haldiman's argument that any duty owed her by Boden arose in the context of a real estate seller-buyer contractual relationship. But, the duty that Haldiman argues that Boden owed to her did not stem from the real estate contract itself. Instead, Haldiman argues that the duty of full and frank disclosure was separate from any duty that the contract between herself and Gosnell imposes. In essence, Haldiman was alleging that the law imposes a duty on real estate sales persons to fully explain to buyers the meaning and impact of the provisions of the real estate contract. Such an action sounds mainly in tort and its existence does not depend upon a *breach* of the contract for sale of real estate. *See Sparks, supra,* 132 Ariz. at 544, 647 p.2d at 1142. If we were to recognize such a tort in the situation presented to us here it would not involve a breach of the actual contract; therefore, it would not be an action arising from a contract. *Id.*

Our result does not hinge on whether we accept Haldiman's argument that a duty existed. For example, a trial court could award attorneys' fees under A.R.S. § 12–341.01(A) in a case where the plaintiff alleged breach of contract, and the court found that no contract was present.

We therefore conclude that the trial court improperly awarded attorneys' fees. We affirm the judgment of the trial court as to the substantive issues, and we remand for a redetermination of attorneys' fees incurred below.

### CROSS–APPEAL

Since we hold that the trial court wrongly awarded attorney's fees, the issue raised by Boden on cross-appeal is moot. Even if we were to consider it, Boden would not be successful.

■ Boden claims in his cross-appeal that the trial court abused its discretion when it reduced their award of attorneys' fees by $2,000. A.R.S. § 12–341.01(B) provides that "the award need not be equal or relate to the attorneys' fees actually paid. The award should mitigate the burden of the expense of litigation to establish a just

claim or a just defense." The trial court has broad discretion in fixing the amount of attorneys' fees actually awarded. *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). Again, there is absolutely no indication that the trial court abused its discretion in reducing the amount of the award.

## COSTS AND ATTORNEYS' FEES ON APPEAL

Appellee Boden has requested attorneys' fees on costs on appeal pursuant to A.R.S. § 12–342(A), and attorneys' fees pursuant to A.R.S. § 12–341.01 and Rule 21(c), Arizona Rules of Civil Appellate Procedure. In our discretion, we decline to award attorneys' fees on appeal.

Affirmed in part, reversed and remanded in part.

JACOBSON, P.J., concurs.

HAIRE, Chief Judge, dissenting in part:

I dissent from that portion of the majority opinion which holds that the trial court improperly awarded attorney's fees to defendant Boden.

Appellant Haldiman's complaint asserted claims for the recovery of damages incurred when Gosnell allegedly breached its contract by refusing to return to Haldiman some $3,300 deposited by her pursuant to her contract to purchase a home from Gosnell. The first count of the complaint alleged that the contract was conditioned upon Haldiman's qualifying for a certain mortgage, that Haldiman was unable to qualify, and that accordingly Gosnell breached the contract by failing to return the sum deposited by her. Thus, the first count sought damages for breach of contract in the amount of the deposits, $3,300 against Gosnell.

The second count, insofar as pertinent to this appeal, sought to recover damages from defendant Boden, a real estate agent.

The second count incorporated the breach of contract allegations of the first count and additionally alleged that Boden represented the plaintiff (Haldiman) in connection with the real estate transaction identified in Count I, and, that in connection with such representation, he owed the plaintiff a duty to give her "full and frank advice." [1] Count II further alleged that defendant Boden "breached this duty." Based on the alleged breach of duty, Haldiman sought to recover damages from Boden in the amount of the deposits, $3,300, which Gosnell had refused to refund to her.

An arbitration award was entered on the first count in favor of Gosnell, in effect determining that Haldiman, rather than Gosnell, had breached the purchase contract, and that Gosnell was entitled to retain the amounts deposited.

Haldiman's claim in the second count against Boden was resolved in Boden's favor when the trial court granted his motion for summary judgment. Although the trial judge did not set forth his reasons for the entry of summary judgment in Boden's favor, it is apparent from the motion papers and from the arguments presented on appeal that he found that there was no agency contract between Boden and the plaintiff, and that accordingly Boden did not owe the plaintiff the duties which normally are created by such a contract. The summary judgment in Boden's favor also awarded him attorney's fees in the amount of $2,094 pursuant to A.R.S. § 12–341.01. While agreeing that the trial judge correctly granted summary judgment in Boden's favor, the majority would reverse the award of attorney's fees to him, holding that the action by Haldiman against Boden was not an "action arising out of a contract" within the meaning of A.R.S. § 12–341.01.

A.R.S. § 12–341.01(A) provides:

"A. In any contested action arising out of a contract, express or implied, the court may award the successful party

---

1. Although not specifically alleged in the complaint, Haldiman's primary contentions were that Boden should have advised her relating to problems which might result from her inability to sell her present home and consequent inability to obtain the financing necessary to complete the purchase from Gosnell.

reasonable attorney's fees. This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney's fees."

As previously stated, it is apparent that the basis for the entry of judgment in Boden's favor was the trial court's conclusion that there was no contractual agency relationship between plaintiff and Boden so as to give rise to the duties and obligations which the law implies when such a relationship is created. The fact that defendant Boden was successful in proving the nonexistence of an agency contract between himself and plaintiff does not preclude the award of attorney's fees to him. The eventual finding that the contract sued upon by the plaintiff does not exist does not negate a defendant's claim for attorney's fees pursuant to A.R.S. § 12–341.01. *See Lacer v. Navajo County,* 141 Ariz. 392, 394, 687 P.2d 400, 402 (App.1984); *Trebilcox v. Brown & Bain,* 133 Ariz. 588, 591, 653 P.2d 45, 48 (App.1982). Accordingly, the issue of Boden's entitlement to attorney's fees must be approached as though a contract of agency actually existed between the parties. With this concept in mind, it is difficult to perceive how a determination could be made that plaintiff's claim did not constitute an action arising out of a contract. In fact, both plaintiff and the majority recognize that the claim against Boden had its genesis in contract, and would not have come into existence in the absence of an agency contract between the parties. It was the absence of such a contractual relationship that led the trial court to conclude that the duties claimed did not arise in this case.

In reviewing the language of A.R.S. § 12–341.01, it is important to note that the authority to award attorney's fees is not limited to "actions for breach of contract." Rather, the language is very broad. The court may award attorney's fees if the action arises "out of a contract, express or implied."

In support of its reversal of the trial court's award of attorney's fees, the majority appears to place controlling significance on the fact that plaintiff characterizes her action as one in tort for negligence or "real estate malpractice" and thus was an action *in delicto* rather than *ex contractu.* This narrow approach to the interpretation of A.R.S. § 12–341.01 has been expressly rejected by the Arizona Supreme Court. In *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982), the court considered whether § 12–341.01 authorized an award of attorney's fees to the plaintiff in a bad faith tort claim asserted against an insurance company. The court stated that there was a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim, and that a violation of that implied duty of good faith constituted a tort. The court rejected the reasoning of Division 2 in *Amphitheater Public Schools v. Eastman,* 117 Ariz. 559, 574 P.2d 47 (App.1977) (statute did not authorize attorney's fees on negligence count based on a duty arising out of a bailment contract),[2] noting that the tort of bad faith could not be committed in the absence of an insurance contract. The court then held that "[b]ecause the existence of the tort is so intrinsically related to the contract, we conclude that an action alleging insurer's bad faith is one 'arising out of a contract' within the meaning of § 12–341. 01(A)." *Sparks,* 132 Ariz. at 544, 647 P.2d at 1142 (footnote omitted).

In *Trebilcox v. Brown & Bain,* this court applied *Sparks* in a tort action for breach of a fiduciary duty arising out of an attorney-client contract. This court noted that the attorney-client relationship was based on contract, and held that the tort action "could not exist but for the breach of the attorney-client contract." The court fur-

---

**2.** "Regardless of the label on the second count, the essence of her claim is negligence, and the statute has no application. *See Wetzel v. Commercial Chair Company,* 18 Ariz.App. 54, 500 P.2d 314 (1972). If the cause of action arises from a breach of promise set forth in the contract, the action is ex contractu, but if it arises from the breach of duty growing out of contract it is ex delicto." 117 Ariz. at 560, 574 P.2d at 48 (footnote omitted).

ther held that attorney's fees were awardable, even when the defendants successfully proved the nonexistence of the contractual relationship.

The majority attempts to distinguish *Sparks* on the basis of the following excerpts from *Sparks:*

> "The fact that the two legal theories are intertwined does not preclude recovery of attorney's fees under § 12–341.01(A) as long as the cause of action in tort could not exist *but for* the breach of the contract." *Sparks,* 132 Ariz. at 543, 647 P.2d at 1141 (emphasis in original).

* * *

> "Clearly, the tort of bad faith cannot be committed absent the existence of an insurance contract *and a breach thereof.*" *Sparks,* 132 Ariz. at 544, 647 P.2d at 1142 (emphasis added).

The majority reasons that since the allegations of the complaint in this case would not have constituted a breach of the alleged agency contract, *Sparks* is inapplicable. Assuming, without deciding, that Boden's alleged breach of the implied obligations created by the alleged agency contract would not have constituted a breach of contract, it is my opinion that the Arizona Supreme Court in *Sparks* did not intend to make a breach of the express terms of the underlying contract a *sine qua non* to the applicability of § 12–341.01 to tort actions arising out of the breach of the relationships created by such a contract.

First, I note that the Arizona Supreme Court has recently held that the tort of bad faith can be committed without the necessity of the breach of the express terms of the underlying insurance contract. *See Rawlings v. Apodaca,* 151 Ariz. 149, 156, 726 P.2d 565, 572 (1986). More importantly, in my opinion the true basis of the court's holding in *Sparks* was its determination of the intrinsic relationship of the tort of bad faith to the contract. In *Sparks,* the court held that the action arose out of a contract because the implied obligations arose from the existence of the contract and the tort could not have been committed in the absence of the contract.

Recently, in *Marcus v. Fox,* 150 Ariz. 333, 723 P.2d 682 (1986), the Arizona Supreme Court expressly rejected the contention that § 12–341.01 could not be applied in a tort action which did not also involve a breach of the underlying contract. *Marcus* did not involve an alleged breach of contract, but rather was an action for damages for fraudulent inducement to enter into the contract. The court stated:

> "In the instant case, [the defendant] argues that, based on our decision in *Sparks,* attorney's fees cannot properly be awarded under § 12–341. 01(A) as this is purely a tort action and no *actual breach* of a contract is involved. [The plaintiff], however, urges us to adopt the more liberal view followed by the appeals court in *Ash [ASH] v. Mesa Unified School Dist.,* 138 Ariz. 190, 673 P.2d 934 (App.1983). There, the phrase 'arising out of a contract' was interpreted to mean any action in which a contract was a *factor* in causing the dispute." 150 Ariz. at 335, 723 P.2d at 684 (emphasis in original).

* * *

> "We believe this language is not limited to only those cases in which a contract is entered into and subsequently breached (*Sparks*). It may also include those cases in which a contract is entered into and later found void due to a claim of fraudulent inducement. For example, in the present case, [the plaintiff] was attempting to invalidate the contract with [the defendant]. It was that contract which prompted this suit and also served as the basis for his claim. Stated otherwise, [the plaintiff's] cause of action for tort could not have existed but for the fraudulently induced contract." 150 Ariz. at 335–36, 723 P.2d at 684–85 (footnote omitted).

As the Arizona Supreme Court noted in *Marcus,* the Arizona courts have broadly interpreted § 12–341.01. In many instances, the Arizona courts have found that the action arose out of a contract, without the necessity of a finding of a breach of contract or even that the litigants were actual parties to the contract. In *ASH, Inc. v. Mesa Unified School Dist.,* 138 Ariz. 190,

673 P.2d 934 (App.1983), the trial court had awarded attorney's fees, pursuant to § 12–341.01, against the party who had sued to invalidate a contract between the defendant municipality and a third party. On appeal it was urged that the award of attorney's fees was improper since the action did not allege rights flowing from an existing contract or breach of contract, but rather a right to compel the municipality to perform a legal duty. We rejected this reasoning, and looking at the essential nature of the litigation, held that the action arose out of a contract within the meaning of § 12–341.01. *See also Lacer v. Navajo County*, 141 Ariz. at 393–95, 687 P.2d at 401–03 (action to enforce deed restrictions by a plaintiff who was not a party to the original contract); *Arizona Farmers Production Credit Ass'n v. Northside Hay Mill & Trading Co.*, 153 Ariz. 333, 736 P.2d 816 (App.1987) (allows attorney's fees in tort action for conversion of cattle based on claims of priority between two competing lienholders); *Arizona Ammonia of Tucson, Inc. v. The Mission Bank*, 152 Ariz. 361, 364, 732 P.2d 591, 594 (App.1986) (reversed trial court's refusal to award attorney's fees to plaintiff in an action against a third party to establish plaintiff's security interests: "The Arizona Supreme Court has directed courts in Arizona to interpret broadly the types of transactions included within the 'arising out of' clause of A.R.S. § 12–341.01(A) (citation omitted). The claims of all parties in this case arise out of the rights, obligations, validity, enforceability and priority of rights arising out of contract."); *Scottsdale Memorial Health Systems, Inc., v. Clark*, 2 CA–CIV 5956 (Ariz.App. March 3, 1987) (even though mechanic's lienholders' rights are based on statute, attorney's fees are allowable where the contract was a major factor in the dispute).

The majority also relies on this court's opinion in *Lewin v. Miller Wagner & Co., Ltd.*, 151 Ariz. 29, 725 P.2d 736 (App.1986). In *Lewin* the court reversed a judgment for attorney's fees awarded pursuant to § 12–341.01, in an action against an accountant based upon the accountant's failure to give proper tax advice to his client. The *Lewin* court recognized that the duty to give appropriate tax advice arose solely from the existence of the contract to perform accounting services between the plaintiff and the defendant accountant, but nevertheless concluded that the action did not arise out of a contract within the meaning of § 12–341.01.

In all candor, I must admit that the holding in *Lewin* supports the majority's decision in this case. However, in equal candor, I find it difficult to find support in the language of the statute, the mainstream Arizona decisions, or in *Lewin* itself for the result reached. The analysis in *Lewin* relies heavily upon the premise that *Sparks* requires a showing of a breach of the underlying contract before an action based on a breach of a duty arising from that contract can be said to be an action arising out of a contract. As I have previously demonstrated in this dissent, that premise is incorrect. Additionally, the *Lewin* court, in discussing the duty which was violated in *Lewin*, states that the duty is a "legally imposed duty [which] exists separate and apart from the contract giving rise to the duty." *Lewin*, 151 Ariz. at 36, 725 P.2d at 743. I disagree. The duty discussed in *Lewin* was completely dependent upon the existence of the contract. Without the existence of the contract, there could be no duty. The duty has no existence separate and apart from the contract.

The *Lewin* court attempts to distinguish prior Arizona decisions such as *Sparks* and *Trebilcox* with the observation that the breach of fiduciary duty arising out of an attorney-client relationship in *Trebilcox*, and the breach of the duty of good faith (bad faith tort) in *Sparks* were "contractual duties" arising from the contract of the parties. I fail to see how the breaches involved in *Trebilcox* and *Sparks* were any more "contractual" in nature than was the breach of duty in *Lewin* or the breach of duty in this case. In my opinion this purported distinction is without meaningful basis. To the extent that *Lewin* relies on *Sato v. Van Denburgh*, 123 Ariz. 225, 599 P.2d 181 (1979), and other cases dealing with the determination of whether an action is in tort or contract for statute of limitations purposes, I do not find these cases persuasive on the issue at hand. A

tort action can be a tort action for statute of limitations purposes and still have its foundation in contract so as to "arise out of a contract" within the meaning of § 12–341.01. In *Sparks* the Arizona Supreme Court rejected the analysis set forth in *Amphitheater,* which denied an award of attorney's fees based on an analogy to statute of limitations decisions. Similarly, in my opinion, the same analysis in *Lewin* must be rejected.

In conclusion, I would hold that the trial judge correctly held that the action against Boden was "an action arising out of a contract" within the meaning of § 12–341.01. Accordingly, I would affirm the award of attorney's fees to Boden. Having arrived at this conclusion, I need not consider the additional contention that the claim could be considered to be an action "arising out of a contract" because it had its genesis in the entirely separate contract which existed between plaintiff and Gosnell. I concur with the majority decision on all other issues.