736 P.2d 816

**ARIZONA FARMERS PRODUCTION CREDIT ASSOCIATION, a cooperative credit association, Plaintiff/Appellee/Cross-Appellant,**

v.

**NORTHSIDE HAY MILL & TRADING COMPANY, an Arizona corporation, Defendant/Appellant/Cross-Appellee.**

No. 2 CA–CV 5955.

Court of Appeals of Arizona, Division 2, Department B.

March 5, 1987.

Reconsideration Denied April 13, 1987.

Evans, Kitchel & Jenckes, P.C. by David J. Ouimette and Michael V. Mulchay, Phoenix, for plaintiff/appellee/cross-appellant.

Jennings, Strouss & Salmon by Gary G. Keltner and Jefferson L. Lankford, Phoenix, for defendant/appellant/cross-appellee.

LACAGNINA, Judge.

### OPINION

Northside Hay Mill & Trading Company (Northside) appeals from an adverse summary judgment awarding Arizona Farmers Production Credit Association (PCA) damages of $140,986 for Northside's conversion of cattle. PCA cross-appeals from the denial of its request for attorneys' fees be-

cause the trial court decided its claim did not arise out of a contract dispute.

Northside argues that summary judgment was improper because of the existence of disputed facts, to wit:

1. PCA consented to the sale of cattle; therefore, the sale was not an unlawful act which resulted in a conversion of the cattle.

2. PCA had no possessory right to the cattle sold because the debtor had filed for bankruptcy, and all rights to the cattle had passed to the trustee in bankruptcy.

3. Northside had perfected a purchase money security interest in the cattle with priority over PCA's security interest in the debtor's after-acquired property.

We reverse because we find that the evidence and reasonable inferences therefrom show a genuine dispute as to the facts which prevents summary disposition. We agree with PCA that the claims arise out of contract and qualify for a discretionary award of attorneys' fees pursuant to A.R.S. § 12–341.01.

### FACTS

Since January of 1981, PCA has held a security interest in cattle owned or later acquired by Martha Duncan to secure a debt owed by her to PCA. The parties executed a security agreement, and PCA perfected its security interest by filing. In May 1982, Duncan defaulted on the obligation. On March 7, 1983, Northside sold Duncan 198 head of cattle through Joe Blair, an independent commission agent, who, contrary to instructions, delivered the cattle upon receipt of an unverified check for the purchase price. After the cattle were delivered to Claud Neal's ranch for pasture, the check was dishonored, and Blair called Neal demanding redelivery.

On March 16, 1983, Northside and Duncan entered into a written purchase agreement, retaining title to the sold cattle as collateral until the sale price was paid. Within ten days of delivery of the cattle to Neal, Northside notified Neal of its written agreement and claim to the cattle in his pasture, and Neal agreed to hold the cattle on its behalf. Northside agreed to and paid pasture charges of $20,000. On December 16, 1983, after Duncan's default, Northside resold the cattle. On June 22, 1984, PCA claimed the cattle sold were covered by its security interest in Duncan's after-acquired property and demanded the proceeds of the sale. Duncan filed for bankruptcy on September 1, 1983, and an automatic stay prevented PCA from executing upon a June 1983 order for replevin of all cattle owned by Duncan.

We reverse the judgment because there exist disputed facts which prevent summary disposition.

### SECURED TRANSACTIONS

■ There is no dispute that PCA holds a perfected security interest on cattle owned or later acquired by Duncan, that the loan debtor was in default in March of 1983, and that because of that default, PCA was entitled to possession of all cattle owned by Duncan. However, PCA's perfected security interest does not have priority over a perfected purchase money security interest in the same collateral if the latter is perfected within ten days after the debtor receives possession of the collateral. A.R.S. § 44–3133(C) (current version at A.R.S. § 47–9312(C) as modified).

The March 16, 1983 purchase agreement between Duncan and Northside satisfies the requirements of § 47–9203(A)(1) and created a security interest in the cattle sold. Did Northside perfect a security interest in the cattle it sold to Duncan? The answer depends on whether notice to Neal, as bailee, within ten days after delivery of the cattle satisfied the requirements of A.R.S. § 47–9305. There is no dispute that Neal received notification of Northside's security interest within the ten-day grace period provided by § 44–3133 and that he agreed to hold the cattle for Northside and was paid for their pasturage by Northside.

■ PCA argues that Northside failed to perfect because Neal was wholly within Duncan's control. We agree that if the evidence were undisputed on this issue, Northside would hold an unperfected purchase money security interest in the cattle

inferior to PCA's security interest. However, Neal's testimony was that he agreed to hold the cattle for Northside and that Duncan agreed to this arrangement. Only a trier of fact can determine and settle the issues of exclusive control, dual agency and constructive possession by the secured creditor.

We do not agree with PCA's argument that the instant the cattle sold were delivered to Neal, as bailee for Duncan, its security interest attached, and nothing Northside did thereafter could change or alter the priority of its security interest in the cattle. Northside had ten days to perfect a purchase money security interest. A.R.S. § 44–3133(C). This grace period is recognized by all authorities as the time in which a seller, who has delivered collateral to the buyer, can perfect a security interest in the collateral. J. White and R. Summers, Handbook of the Law under the Uniform Commercial Code § 25–5 at 1050–51 (2d ed. 1980).

The case of *General Electric Credit Corporation v. Tidwell Industries,* 115 Ariz. 362, 565 P.2d 868 (1977), supports our view. In *General Electric,* our supreme court noted that the seller permitted the mobile homes to remain on the debtor's lot for thirty to ninety days without making any effort to perfect a security interest. The court distinguished the case of *Zions First National Bank v. First Security Bank of Utah,* 534 P.2d 900 (Utah 1975), on in its facts, which indicates to us that if Tidwell had perfected within ten days, rather than not perfecting at all, our supreme court would have followed the holding in *Zions.*

The facts of the case before us are similar to the facts in *Zions* as stated by our supreme court:

> Tidwell, however, cites *Zions First Nat. Bank v. First Sec. Bank of Utah, N.A.,* 534 P.2d 900 (Utah 1975) in support of its position that Parkwood acquired no rights upon which G.E.C.C.'s interest could attach. In that case, the court sustained a lower court finding that cattle shipped to a feedyard were owned by the seller and not subject to the bank's

security interest in the feedyard's after-acquired property. That case, however, is readily distinguishable on its facts. Shortly after the seller shipped the cattle to the buyer and upon learning that the buyer could not pay for the cattle, the seller had the cattle separated and marked with a brand later registered to him. In the instant case, by contrast, Tidwell made no effort to segregate its mobile homes or withdraw them from Parkwood's lots when no payment was forthcoming. On the contrary, it allowed Parkwood to retain possession and control of the mobile homes for anywhere from thirty to ninety days without making any effort to perfect its interest or notify creditors including G.E.C.C.

115 Ariz. at 366, 565 P.2d at 872.

The failure to perfect within the ten-day grace period was central to the court's decision in *North Platte State Bank v. Production Credit Association of North Platte,* 189 Neb. 44, 200 N.W.2d 1 (1972).

> There is a further and even more fundamental reason why the Bank may not succeed in establishing any priority over PCA in the enforcement of its security interest. This is because that although it filed its statement within 10 days after it made its loan, the filing occurred almost 2 months after the cows had been delivered and the title had passed to Tucker. At the risk of repetition, we will repeat the basic portion of section 9–312(4), U.C.C., which states: ' * * * if the purchase money security interest is perfected at the time the *debtor* receives possession of the collateral or within ten days thereafter.' (Emphasis supplied.) The application of this plain, simple, and forceful language to the facts in the case at bar seem so obvious as not to require any further argument.
>
> * * · * * * * *
>
> The very purpose of the 10–day grace period was to relieve from the rigidity of a requirement of a loan first and acquisition second or simultaneousness of receipt of possession and execution of the loan. At the same time the integrity of the transaction had to be guaranteed by an ascertainable standard related to the

receipt of possession, and the retroactive granting of priority over the first to file and the first to advance funds. See II Gilmore, Security Interests in Personal Property, s. 29.2, p. 782.

189 Neb. at 49–50, 200 N.W.2d at 6–7.

We note that the cattle sold by Northside to Duncan and delivered to Neal, as bailee, did not mislead any existing creditor of Duncan who advanced additional credit on the strength of additional assets in Duncan's possession, nor is there any evidence that PCA was prejudiced by Duncan's possession. PCA made a claim against Northside for conversion in 1984, many months after Northside resold the cattle, and never advanced additional credit to Duncan on the mistaken belief that its security had been increased by the additional cattle purchased.

## CONVERSION

■ PCA's claim against Northside for conversion is based on the sale of cattle impressed with its prior security interest. Assuming arguendo that PCA prevails at trial on the issue of Neal's agency, it is entitled to damages for conversion because Northside would have failed to perfect its purchase money security interest, unless PCA waived its right to possession of the after-acquired cattle by its debtor, or is estopped by its conduct from claiming conversion. There are conflicting inferences raised by the evidence which prevent summary judgment on PCA's claim of conversion. Northside offered evidence that on October 31, when it discussed with PCA the sale of cattle to Duncan, the repossession and intended resale of the cattle, PCA remained silent and made no claim to the cattle. The affidavits of Northside's assistant manager are sufficient to defeat summary judgment. Both are part of the record on appeal although one was filed with the trial court in support of Northside's motion for reconsideration and new trial. *Occidental Chemical Company v. Connor*, 124 Ariz. 341, 604 P.2d 605 (1979); *Lundy v. Prescott Valley, Inc.*, 110 Ariz. 362, 519 P.2d 61 (1974); *Insurance Company of North America v. General Electric Credit Corporation*, 119 Ariz. 97, 579 P.2d 601 (App.1978), disapproved *Citicorp*

*Homeowners, Inc. v. Western Surety Company*, 131 Ariz. 334, 336, 641 P.2d 248, 250 (App.1982); Restatement (Second) of Torts § 894(2) and comment e (1965).

## ATTORNEYS' FEES

■ Even though the complaint in this case was founded on the tort of conversion, the dispute arises from claims of priority by the holders of two competing security interests. This court in a similar case involving priority rights held that A.R.S. § 12–341.01(A) was applicable to such cases as claims arising out of the rights, obligations, validity, enforceability and priority of rights arising out of contract. *Arizona Ammonia of Tucson, Inc. v. The Mission Bank*, 152 Ariz. 361, 732 P.2d 591 (1986). *See also, United Bank of Arizona v. Sun Valley Door and Supply*, 149 Ariz. 64, 716 P.2d 433 (App.1986); *First National Bank of Arizona v. Continental Bank*, 138 Ariz. 194, 673 P.2d 938 (App.1983).

On remand, the court may at the termination of the litigation, in its discretion, consider an award of attorneys' fees, including fees on appeal, pursuant to § 12–341.01(A).

Reversed and remanded.

HATHAWAY, C.J., and LIVERMORE, P.J., concur.