819 P.2d 1003

MUR–RAY MANAGEMENT CORPORATION, an Arizona corporation; CSL Arizona, Inc., an Arizona corporation, successor in interest to N.G. Lingford Enterprises, Ltd., a Canadian corporation; Robert G. Smith, a Canadian resident; Dr. Peter A. Roxburgh, a Canadian resident; John J. Newman, a Canadian resident; Derek S. Jones, a Canadian resident; H.W. Kujat, a Canadian resident; and Concrest Corporation, Inc., a Nevada corporation, Plaintiffs–Appellants,

v.

FOUNDERS TITLE COMPANY an Arizona corporation, successor in interest to Title Insurance Company of Minnesota; Title Insurance Company of Minnesota, a Minnesota corporation; Travelers Indemnity Company, a Connecticut corporation; Troy D. Jones and Lona F. Jones, husband and wife; L. Dwain Hoover and Beva J. Hoover, husband and wife; and Canterbury Investment Corporation, Inc., an Arizona corporation, Defendants–Appellees.

No. 1 CA–CV 89–281.

Court of Appeals of Arizona, Division 1, Department A.

May 28, 1991.

Review Denied Dec. 3, 1991.

* A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Court of Appeals, Division Two, pursuant to

Arizona Supreme Court Order filed July 25, 1990.

Storey & Ross, P.C. by Dennis I. Wilenchik, Charles A. Grube and Bradley D. Patterson, Phoenix, for defendants-appellees Founder's Title Co., Title Ins. Co. of Minnesota and Travelers Indem. Co.

Teilborg, Sanders & Parks, P.C. by James M. Marlar, Phoenix, for defendants-appellees Troy D. Jones, Lorna F. Jones, L. Dwain Hoover and Beva J. Hoover.

Ryley, Carlock & Applewhite by N. Warner Lee and David E. Shein, Phoenix, for plaintiffs-appellants.

## OPINION

LANKFORD, Judge.

Plaintiffs have appealed from a summary judgment entered by the superior court in favor of all defendants in this action, in which plaintiffs both sought a declaration of their right to a promissory note and also requested damages.

Plaintiffs have presented two central issues for review:

1) Did the trial court err in granting summary judgment in favor of defendants Jones, Hoover and Founders Title Company on the basis that plaintiffs do not have an enforceable security interest in the promissory note?

2) Did the trial court err in granting summary judgment in favor of defendant Minnesota Title on the ground that Minnesota Title owed no legal duty to plaintiffs in its capacity as an escrow agent?

We reverse and remand to the trial court.

## I.

On an appeal from summary judgment, we view the facts in the light most favorable to the appellant. *State ex rel. Corbin v. Challenge, Inc.*, 151 Ariz. 20, 725 P.2d 727 (App.1986). Viewed in that light, the facts are as follows.

In 1981, the plaintiffs formed a partnership with Canterbury Investment Corporation (Canterbury). In 1984, Canterbury fraudulently induced the partnership to sell its principal asset, causing substantial losses to the plaintiffs.

In an attempt to settle matters with the plaintiffs, Canterbury delivered checks to the plaintiffs to pay for the losses they had sustained. All of these checks were dishonored for insufficient funds.

In November 1986, Canterbury again attempted to make amends by executing a guaranty to the plaintiffs for payment of its losses. Canterbury secured the guaranty with an "Irrevocable Assignment of Proceeds" (Assignment), which assigned to the plaintiffs all proceeds due Canterbury under an existing escrow in which Title Insurance Company of Minnesota (Minnesota Title) was the escrow agent.

Approximately two weeks later, plaintiff Robert Smith delivered the guaranty and Assignment to Minnesota Title's escrow officer, Jessee Wallace. A conversation ensued in which Smith asked Wallace what the Assignment meant. Wallace responded that any monies passing through the escrow that would otherwise be paid to Canterbury would be paid to the plaintiffs.

Wallace further stated that there were conditions to the escrow and that the Assignment might not be worth anything. Smith also asked Wallace if the appellants needed to do anything else to ensure that they would receive Canterbury's interest in the escrow. Wallace responded that he would put the Assignment into the escrow and that plaintiffs need not do anything more.

The Minnesota Title escrow account was to receive proceeds from the sale of certain unimproved real property known as the Rainbow Valley Property. Defendants Jones, Hoover, and Canterbury each owned a one third interest in this property. The Rainbow Valley Property sale was structured so that the buyer, Park Orange, would pay sufficient cash at the close of the escrow to retire all existing encumbrances on the property. Canterbury, Jones, and Hoover would then carry back a promissory note (Note) for the balance of the purchase price. This Note was secured by a First Deed of Trust on the property.

In December 1986, Canterbury executed another assignment, which assigned its one third beneficial interest in the Rainbow Valley Property to Hoover and Jones. Minnesota Title closed the escrow on December 29, 1986. Minnesota Title filed the First Deed of Trust in the Maricopa County Recorder's office the following day.

In January 1987, appellee Founders Title Company (Founders) succeeded to the assets and ongoing business of Minnesota Title. This included the obligation to act as servicing agent for the Rainbow Valley Property escrow and to collect and disburse the buyer's annual payments on the Note.

Canterbury defaulted on its obligations under its guaranty to plaintiffs in April 1987. Thereafter, plaintiffs filed this action seeking a declaratory judgment as to their rights in Canterbury's one-third interest in the Note and to recover damages for any funds disbursed to Canterbury by the escrow agent out of the buyer's payments on the Note. Plaintiffs also alleged that the statements made by the escrow officer, Wallace, constituted negligent misrepresentations by Minnesota Title.

Defendants Founders and Minnesota Title moved for summary judgment on the ground that appellants lacked any security interest in the Note. Alternatively, they asserted that even if there were a valid security interest in the Note, that interest was unperfected and thus subordinate to the First Deed of Trust, which had been perfected by the filing with the county recorder. Defendants further argued that Minnesota Title owed no legal duty to plaintiffs and therefore could not be liable to them for negligent misrepresentation.

Plaintiffs' cross-motion for summary judgment sought a judgment declaring that its interest in the Note was superior to that of Hoover and Jones.

The superior court granted summary judgment for all defendants and denied the plaintiffs' cross-motion for summary judgment.

## II.

■ We first consider whether the summary judgment is supported by the theory that plaintiffs lack an enforceable security interest in the Note.

The superior court may grant summary judgment only when the record reflects no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Ariz.R.Civ.P. The moving party bears the burden of demonstrating that she or he is entitled to summary judgment. *See United Bank v. Allyn*, 167 Ariz. 191, 805 P.2d 1012 (App. 1990).

Both defendants and plaintiffs claim interests in the same promissory note. The Note itself is a "negotiable instrument" under the Uniform Commercial Code. A.R.S. § 47-3104. Counsel for Jones and Hoover conceded at oral argument that, for purposes of this appeal, the Assignment of all proceeds from the escrow included a valid security interest in both the Note and the buyer's payments under the Note. The plaintiffs' security interest in the Note is also governed by the Code. A.R.S. § 47-9105(A)(11).

We therefore need not, and do not, decide the conceded point that the plaintiffs'

security interest is valid. We instead focus on the defendants' argument that plaintiffs' security interest was not perfected and hence is inferior to defendants' interest in the Note.

In deciding this question, we first consider the nature of defendants' interest in the Note. Hoover and Jones were, with Canterbury, co-payees on the Note. As to Canterbury's interest in the Note, Jones and Hoover were arguably assignees of that interest. However, Canterbury's first assignment was to plaintiffs in November 1986; the assignment to Jones and Hoover occurred in December 1986.

■ We have also considered the effect of the recording of the First Deed of Trust. Hoover and Jones contend that this event gave them a perfected security interest under real property law in Canterbury's share of the Note. This argument misperceives the nature of the various interests in the Note.

Recording a deed of trust encumbering the *real property* did not alter the interest of Jones and Hoover in the *Note*. The deed of trust did not perfect defendants' right under the assignment to receive Canterbury's share of the Note; rather, it secured with the real property the buyer's (Park Orange's) payments under the contract of sale. In short, the deed of trust secured the sellers' rights against Park Orange and did not perfect the defendants' rights against Canterbury under the Assignment.

The ineffectiveness of the deed of trust to perfect defendants' interest does not conclude the inquiry, however. If Jones and Hoover are "holders in due course" of the Note, then their interest in it prevails over the plaintiff's security interest, even though that interest may be perfected. A.R.S. § 47-9309. As payees and assignees, the defendants may qualify as "holders in due course" of the Note. A holder in due course is defined as a holder who "takes the instrument for value; and [i]n good faith; and without notice ... of any defense against or claim to it on the part of any person." A.R.S. § 47-3302(A). A "holder" is one "who is in possession of ... an instrument ... issued or indorsed to him

or to his order or to bearer or in blank." A.R.S. § 47–1201(20).[1]

Whether Jones and Hoover are holders in due course cannot be decided here. Plaintiffs concede that Jones and Hoover purchased Canterbury's one third interest in the Note and thus gave value for it. Defendants also have possession of the Note. However, whether Jones and Hoover took possession of the Note in good faith and without notice of any claim is unclear and remains for determination by the trier of fact.

We now examine the nature of plaintiffs' interest in the Note. As discussed above, it was conceded that plaintiffs obtained a security interest in the Note. The parties also agree that plaintiffs would be entitled to receive the proceeds of payments on the Note in the event Canterbury defaulted on its guaranty.

A security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors. A.R.S. § 47–9201. Moreover, a security interest "continues in collateral notwithstanding its sale, exchange or other disposition thereof unless the disposition was authorized by the secured party ..." A.R.S. § 47–9306(B). Because defendants acquired their interest in the Note subsequent to the creation of plaintiffs' security interest, defendants' interest generally yields to plaintiffs'.

However, there are exceptions to this general rule. As noted above, if the collateral is an instrument, a holder in due course prevails even over a secured creditor. In addition, a subsequent buyer can prevail over a prior *unperfected* secured creditor if the purchase is "not in the ordinary course of business, to the extent that [the buyer] gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected." A.R.S. § 47–9301(A)(3).

These issues therefore remain in the case: (1) are defendants holders in due course? (2) If they are not, did plaintiffs fail to perfect their security interest, and did defendants not purchase in the ordinary course of business, and did defendants receive the Note without knowledge of the security interest? If, but only if, either question one or question two is answered in the affirmative, defendants may prevail over plaintiffs' security interest.

■ Just as we observed above that defendants' status as holders in due course is not established conclusively by the present record, neither is question two susceptible to summary judgment. Whether defendants had knowledge of the security interest cannot be decided by summary judgment on the present record. The "knowledge" required by the Uniform Commercial Code is *actual* knowledge that a security interest existed. *Snap–On Tools Corp. v. Rice*, 162 Ariz. 99, 101, 781 P.2d 76, 78 (App.1989). The defendants' involvement as principals in an escrow which included the plaintiffs' security agreement may permit an inference that defendants were aware of the security interest. However, because conflicting inferences about defendants' knowledge may reasonably be drawn from the evidence, this factual dispute must be determined at trial.

Furthermore, we are unable to determine whether Jones and Hoover received Canterbury's interest in the Note "not in the ordinary course of business." This issue has not been briefed by the parties and therefore, should also be determined at trial.

Whether the plaintiffs perfected their interest in the Note is also not clearly resolved by the record. The method of perfection is dictated by the type of collateral secured. The Note is an "instrument" as defined by A.R.S. § 47–9105(A)(11). To perfect a security interest in an instrument, the secured party must take possession of

---

1. A payee may be a holder in due course. A.R.S. § 47–3302(B). Jones and Hoover are clearly named as payees on the Note. However, this status may or may not aid them in establishing an entitlement under an assignment to the rights of a co-payee, Canterbury. The question has not been briefed by the parties and is not essential to our disposition. We therefore do not decide the point.

the instrument. A.R.S. § 47–9304(A). In this case, the plaintiffs never obtained actual possession of the Note.

Plaintiffs may have obtained constructive possession, however. A secured party is considered to be in possession when the collateral is held by a bailee and the bailee has received notification of the secured party's interest. A.R.S. § 47–9305.

The pivotal issue is whether Minnesota Title acted as a bailee under A.R.S. § 47–9305. If Minnesota Title was a bailee with notice of plaintiffs' security interest, then plaintiffs may have perfected by possession.

■ Whether the escrow agent was acting as a bailee rests on whether Minnesota Title was wholly within the control of the debtor, Canterbury. If the debtor wholly controlled the escrow agent, then the agent could not have acted as a bailee on behalf of the creditor. *See Arizona Farmers Production Credit Ass'n v. Northside Hay Mill Trading Co.*, 153 Ariz. 333, 334–35, 736 P.2d 816, 817–18 (1987); *Unif. Comm. Code* § 305, comment 2, 9 U.L.A. 428 (1977). *See also Appeal of Copeland*, 531 F.2d 1195, 1204 (1976) (possession by a third party bailee who is not controlled by debtor satisfies requirement of UCC § 9–305 (A.R.S. § 47–9305)); *In re Nichols*, 88 B.R. 871, 876 (Bankr.C.D.Ill.1988) (possession of note by escrow agent gave notice that debtor no longer had unfettered use of funds in escrow account). On the other hand, the debtor's partial influence or control over a third party does not prevent that party from acting as a bailee for the creditor: the secured party need not possess sole dominion and control over the individual in possession of the collateral to comply with § 47–9305. *Appeal of Copeland*, 531 F.2d at 1204.

The record fails to show conclusively that Minnesota Title was controlled solely by Canterbury. On the contrary, the evidence that Minnesota Title accepted the Assignment and agreed to honor it creates a reasonable inference that the title company was not controlled by the debtor alone.[2] Summary judgment in favor of defendants on this issue is therefore not appropriate. *See Arizona Farmers Production Credit Ass'n*, 153 Ariz. at 335, 736 P.2d at 818.

### III.

■ We now consider whether Minnesota Title, as an escrow agent, owed a legal duty to use reasonable care in communicating information to appellants. In granting Minnesota Title's motion for summary judgment, the trial court found that the negligent misrepresentation claim lacked merit because Minnesota Title owed no "special duty" when it made its representations to appellant. We disagree.

Arizona has adopted Section 552 of the *Restatement (Second) of Torts* in defining negligent misrepresentation. *St. Joseph's Hospital and Medical Center v. Reserve Life Ins. Co.*, 154 Ariz. 307, 742 P.2d 808 (1987); *Arizona Title Ins. and Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 484 P.2d 639 (1971). Section 552 provides in pertinent part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so

---

**2.** Additionally, the record shows that Jones, Hoover, and Park Orange, in addition to Canterbury, were principals to the escrow when Smith delivered the Assignment to Minnesota Title. As principals, they too had some control over the escrow agent in matters relating to the Note.

intends or in a substantially similar transaction....

■ Liability for negligent misrepresentation is limited to information supplied in connection with commercial transactions. *St. Joseph's Hospital and Medical Center*, 154 Ariz. at 312–13, 742 P.2d at 813–14 (citing *Restatement (Second) of Torts* § 552, comment (a)). The provider of information is bound to exercise care only when he is aware of the intended use of the information and then only if he intended to supply it for that purpose. *Id.*

■ Additionally, § 552(1) applies only when the defendant has a pecuniary interest in the transaction in which the information is given. *Restatement, supra* at comment (c). The fact that the information is given in the course of defendant's business, profession or employment is a sufficient indication of such a pecuniary interest, even though he receives no consideration specifically for providing the information. *Id.* at comment (d).

The *Restatement* rule applies to this case. Minnesota Title provided information to Mr. Smith in the course of its escrow business. Robert Smith went to Minnesota Title's place of business and delivered the guaranty and Assignment to its escrow officer, Jessee Wallace. Smith asked Wallace what the Assignment meant and whether anything more was needed to ensure that appellants would receive Canterbury's interest in the escrow. The apparent purpose of these questions was to ensure that plaintiffs received Canterbury's interest in the escrow. Wallace allegedly responded that any monies passing through the escrow would be paid to the plaintiffs, that the Assignment might not be worth anything and that Smith need not do anything else about the Assignment.

Thus, the facts reveal that Minnesota Title supplied information to appellant Smith about a commercial matter. Minnesota Title supplied this information in the course of its business as an escrow agent. When Minnesota Title chose to supply information to Smith for guidance in a business matter, it assumed a duty to use reasonable care that the information was truthful.

A prior decision by this court supports this conclusion. In *Arizona Title Ins. and Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 484 P.2d 639 (1971), seven contractors sued Arizona Title Insurance and Trust Company (Arizona Title) for negligent misrepresentation in making statements in its capacity as an escrow agent. Arizona Title had agreed pursuant to a "Builder's Control Agreement" to act as a disbursing agent on a construction loan. The loan proceeds were to be used to pay contractors for the construction of the principal's apartment building.

Arizona Title assured the contractors that money was on hand or would be made available to pay them. However, due to insufficient funds from the construction lender, Arizona Title ultimately failed to pay the contractors. When the contractors sued, Arizona Title responded that it had no duty to speak accurately both because the contractors were not parties to the escrow and because providing the information was not part of the "end and aim" of its business.

Relying on § 552 of the *Restatement*, this court held that once Arizona Title had chosen to speak, it had to exercise reasonable care in making representations to the contractors. 14 Ariz.App. at 491–92, 484 P.2d at 645–46. This duty existed notwithstanding a lack of privity between the parties and the absence of any duty to respond to the contractors' inquiries. *Id.*

Similarly, although Minnesota Title may have had no duty to respond to Robert Smith's questions, when Minnesota Title chose to speak in its capacity as an escrow agent, it assumed a duty to use reasonable care when it did speak. Moreover, just as Arizona Title acted as its principal's disbursing agent to the contractors, here Minnesota Title, by accepting the Assignment into the escrow, acted as Canterbury's disbursing agent to the plaintiffs.

We hold that Minnesota Title owed a duty of reasonable care when it supplied information to Smith. Whether it breached its duty is a question for the trier of fact.

The superior court's entry of summary judgment against the negligent misrepresentation claim must be reversed.

## IV.

■ We note that appellee Founders asserts on appeal that it is not a proper party to this lawsuit. Founders argues that although it succeeded to the assets of Minnesota Title, Minnesota Title also agreed in this succession of assets that Founders would not assume liability for any acts that arose prior to December 31, 1986. The conduct giving rise to the negligent misrepresentation claim arose on November 25, 1986.

It is well settled that arguments or theories not presented at the trial level cannot be asserted for the first time on appeal from summary judgment. *Campbell v. Warren*, 151 Ariz. 207, 726 P.2d 623 (App. 1986); *Stratton v. Inspiration Consolidated Copper Co.*, 140 Ariz. 528, 683 P.2d 327 (App.1984); *Cote v. A.J. Bayless Markets, Inc.*, 128 Ariz. 438, 626 P.2d 602 (App. 1981). The record below is devoid of any argument that Founders was not a proper party to this lawsuit. We therefore do not address this issue.

For the forgoing reasons, we reverse the superior court's entry of summary judgment and remand this case to that court for further proceedings consistent with this opinion.

TAYLOR, P.J., and CONTRERAS, J., concur.