NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

―――――――――――――――――――――

TOUCH STONE AZ-CENTRAL PROPERTIES, L.L.C., an Arizona limited liability company, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

TITLE MANAGEMENT AGENCY OF ARIZONA, L.L.C., an Arizona limited liability company; WESTERN SURETY COMPANY, a South Dakota corporation, *Defendants/Appellees/Cross-Appellants*.

Nos. 1 CA-CV 12-0614, 1 CA-CV 12-0724, 1 CA-CV 12-0782
(Consolidated)
FILED 5-1-2014

―――――――――――――――――――――

Appeal from the Superior Court in Maricopa County
No. CV2009-037433
The Honorable John Rea, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

―――――――――――――――――――――

COUNSEL

Curtis Ensign, P.L.L.C., Phoenix
By Curtis Ensign
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Davis Miles McGuire Gardner, PLLC, Tempe
By Gregory L. Miles, Julie A. LaFave, Joshua Carden
*Counsel for Defendants/Appellees/Cross-Appellants*

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

**S W A N N**, Judge:

**¶1** This appeal involves claims asserted against an escrow agent by a plaintiff who purchased property without knowing it was encumbered by a deed of trust. The superior court entered summary judgment in the escrow agent's favor on the plaintiff's claims for breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and negligence, and the court denied the plaintiff's motion to amend its complaint to allege additional claims. We hold that summary judgment on the complaint was proper, but the court erred by determining that the plaintiff's proposed negligent misrepresentation claim was futile. We therefore affirm in part, reverse in part, and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

**¶2** In July 2009, Touch Stone AZ-Central Properties, LLC ("Touch Stone") sought to purchase real property from DYRCZ Commercial Venture, LLC ("DYRCZ"). The parties executed an escrow employment agreement and escrow instructions (collectively, "the escrow contracts") by which they agreed that Title Management Agency of Arizona, LLC ("Title Management") would act as escrow agent for the sale. The escrow instructions set forth the terms of the sale and there was no other contract between the buyer and seller.

**¶3** Under the escrow contracts, Title Management was directed to disburse Touch Stone's purchase money to DYRCZ when the terms of escrow were complied with and the title insurer, Commonwealth Land Title Insurance Company ("Commonwealth"), became willing to issue a title insurance policy through Title Management as its agent.

**¶4** Commonwealth, through an employee of Title Management's title department, issued an initial commitment for title insurance conditioned on the release of certain liens on the property, including a deed of trust held by Northern Trust Bank, N.A. ("Northern Trust"). Later, after a trustee's sale was completed concerning other

properties encumbered by Northern Trust's deed of trust, the title-department employee came to believe that the property Touch Stone sought to purchase was not encumbered by the deed of trust after all and that no release of lien was necessary. Title Management closed the escrow and Commonwealth issued a title insurance policy that did not list Northern Trust's deed of trust as an exception.

¶5        In fact, the property that Touch Stone purchased was indeed encumbered by Northern Trust's deed of trust, and was sold to Northern Trust at a trustee's sale a few months after Touch Stone acquired it. This action followed, with Touch Stone asserting claims against Commonwealth and against Title Management and its surety, Western Surety Company (collectively, "Title Management"). Touch Stone eventually settled its claims against Commonwealth. As against Title Management, Touch Stone alleged in its first amended complaint that in closing the escrow with Northern Trust's deed of trust outstanding, Title Management breached its contractual duties, breached its fiduciary duties, breached the covenant of good faith and fair dealing, and was negligent.

¶6        Touch Stone and Title Management filed competing motions for summary judgment on the contract and negligence claims. The superior court denied Touch Stone's motion and granted Title Management's motion. Touch Stone then sought leave to file a second amended complaint that alleged additional forms of breach of fiduciary duty and breach of the covenant of good faith and fair dealing, and added new counts for negligence and negligent misrepresentation. The court denied the motion to amend, finding that the proposed amendments did "not add any allegation or claim that would survive the arguments and authorities presented in [Title Management's] Motion for Summary Judgment." Some months after the court denied Touch Stone's motion to amend, Title Management filed a second motion for summary judgment, directed at the existing fiduciary duty and good faith and fair dealing claims. The court granted Title Management's motion and dismissed the action.

¶7        Touch Stone appeals the entry of summary judgment and the denial of its motion to file the second amended complaint. Title Management appeals the denial of its application for attorney's fees.

**DISCUSSION**

I.      TOUCH STONE'S APPEAL

A.      Title Management Was Entitled to Summary Judgment on the First Amended Complaint.

¶8          In the first amended complaint, Touch Stone asserted claims against Title Management for breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and negligence. The contract, fiduciary duty, and good faith and fair dealing claims were predicated on an alleged breach of requirements expressly or impliedly created by the escrow contracts. The negligence claim, by contrast, was based on the title-department employee's mistaken conclusion regarding the continuing applicability of Northern Trust's deed of trust, which in turn led to satisfaction of a condition precedent to Title Management's performance under the escrow contracts. We hold that under the undisputed material facts, Title Management was entitled to judgment as a matter of law on all of the claims set forth in the first amended complaint. *See* Ariz. R. Civ. P. 56(a).

¶9          Touch Stone contends that Title Management knew the transaction was meant to be lien-free because the escrow instructions set forth a purchase-price calculation that showed "N/A" and "$ 0.00" next to headings styled "encumbrance of record." Moreover, the escrow officer and the employee who acted as Commonwealth's agent both testified that they believed the transfer would be "free and clear." But the fact that Title Management knew that the parties intended a lien-free transfer did not transform Title Management from an escrow agent into a title investigator, guarantor, or insurer. Nothing in the escrow contracts provided or even suggested that Title Management assumed responsibility for ensuring that no title defects existed. Under the clear and unambiguous terms of the escrow contracts, Title Management's only relevant responsibility was to wait to close the escrow until Commonwealth indicated its willingness to issue a policy for title insurance. Consistent with its duties as a fiduciary, Title Management performed precisely the duties required of it in the escrow contracts. *See, e.g.*, *Tucson Title Ins. Co. v. D'Ascoli*, 94 Ariz. 230, 234, 383 P.2d 119, 121 (1963).

¶10          Contrary to Touch Stone's contentions, the escrow contracts did not impliedly require that Title Management clear the title to the property. To be sure, Title Management assumed some obligations

beyond the express terms of the escrow contracts. Title Management's fiduciary duties, as well as the implied covenant of good faith and fair dealing, required it to act with scrupulous honesty, fairness, skill, and diligence. *Burkons v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 345, 355, 813 P.2d 710, 720 (1991); *D'Ascoli*, 94 Ariz. at 234, 383 P.2d at 121-22. For example, Title Management was required to disclose known facts that reasonably indicated fraud. *Burkons*, 168 Ariz. at 353, 813 P.2d at 718. And similarly, Title Management was required to disclose any substantial title defects of which it had knowledge. *Cf. Aranki v. RKP Invs., Inc.*, 194 Ariz. 206, 208-09, ¶ 9, 979 P.2d 534, 536-37 (App. 1999) (holding that real estate agents' duty of fair dealing required disclosure of known latent defects in home). But Title Management was not required to search for fraud or title defects. *Burkons*, 168 Ariz. at 353, 813 P.2d at 718; *Aranki*, 194 Ariz. at 208-09, ¶ 9, 979 P.2d at 536-37. It is undisputed that when Title Management closed the escrow, it believed the property was unencumbered. We hold that Title Management acted in conformance with its fiduciary duties and the covenant of good faith and fair dealing.

¶11    Touch Stone argues that Title Management's belief that the property was unencumbered cannot provide a defense to liability because its belief arose from a "wrong" that Title Management itself committed. The "wrong" to which Touch Stone refers is the conduct described by its negligence claim: the title-department employee's mistaken reassessment of Northern Trust's deed of trust. As a matter of law, the mistake did not constitute negligence. Negligence requires the existence of a duty of care. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007). As escrow agent, Title Management had no duty to represent the condition of title. Further, Title Management assumed no such duty by providing a title insurance commitment and policy on Commonwealth's behalf. A policy attached to a commitment's list of discovered title defects "is not a promise that no other exceptions or encumbrances exist[, but is instead] . . . a contract under which the insurer agrees to indemnify the insured for losses caused by claims arising from encumbrances not identified in the insurer's commitment." *Centennial Dev. Grp., LLC v. Lawyer's Title Ins. Corp.*, 233 Ariz. 147, 149, ¶ 6, 310 P.3d 23, 25 (App. 2013). A title insurance commitment "is not a representation as to the condition of title to real property," A.R.S. § 20-1562(5), and gives rise to "no rights, duties, or responsibilities" related to ensuring clear title. *Centennial Dev. Grp., LLC*, 233 Ariz. at 149, ¶ 10, 310 P.3d at 25.

¶12    None of the claims set forth in Touch Stone's first amended complaint alleged a violation of any duty imposed by contract or by law.

The superior court correctly entered summary judgment for Title Management on the first amended complaint.

    B.  Touch Stone's Proposed Second Amended Complaint Was Not Entirely Futile.

¶13  Touch Stone contends that it should have been allowed to file its second amended complaint. "Leave to amend shall be freely given when justice requires." Ariz. R. Civ. P. 15(a)(1)(B). Leave to amend should be granted when the underlying facts relied upon may be a proper subject of relief, and should also generally be granted when the amendment merely seeks to add a new legal theory. *MacCollum v. Perkinson*, 185 Ariz. 179, 185, 913 P.2d 1097, 1103 (App. 1996). The court may deny amendment, however, if the amendment would be futile. *Bishop v. State Dep't of Corr.*, 172 Ariz. 472, 474-75, 837 P.2d 1207, 1209-10 (App. 1992). We agree for the most part with the superior court's determination that Touch Stone's proposed amendments would have been futile, but we conclude that its proposed negligent misrepresentation claim should have been allowed.

¶14  As an initial matter, Touch Stone points out that the court's futility finding relied on arguments previously asserted in the summary judgment proceedings on the contract and negligence claims, which were not claims that Touch Stone sought to amend. Contrary to Touch Stone's suggestion, the court's reliance on the previous arguments was appropriate. All of the claims that Touch Stone asserted shared substantial factual and legal similarities. The arguments directed toward the previously disposed-of contract and negligence claims were also relevant to the court's consideration of the amendments that Touch Stone sought to make to its fiduciary duty and good faith and fair dealing claims, and to the new claims that Touch Stone sought to add.

¶15  With respect to the fiduciary duty and good faith and fair dealing claims, Touch Stone sought to allege the following as additional examples of breach: "preparing escrow instructions that did not clearly indicate or failed to indicate that the parties' agreement was that the Property was to be transferred free and clear of liens," and "preparing a deed that indicated that the Property was to be conveyed subject to all encumbrances of record." Touch Stone also sought to add a new negligence claim based on these factual allegations. The court did not err by finding that these amendments would be futile. The escrow instructions already fairly suggested that the parties intended a lien-free transfer, and Title Management had actual knowledge of the parties'

intention. But Title Management's knowledge of the transaction's intended result did not create an express or implied obligation to investigate and eradicate title defects. Likewise, Title Management was obligated neither by contract nor by law to prepare a deed that warranted title against encumbrances.

¶16 Touch Stone also sought to amend the fiduciary duty claim, and to add a new claim for negligent misrepresentation, based on alleged representations by Title Management. In the proposed negligent misrepresentation claim, Touch Stone alleged, in relevant part, that:

> In the course of dealing between [Title Management] and Plaintiff, [Title Management], through its duly authorized representatives, represented as follows:
>
>> a. that after the foreclosure by Northern Trust, the Property was what remained and Northern Trust did not have a lien on the Property; and
>>
>> b. that the Property was free and clear of liens.

Touch Stone also alleged that it relied on these alleged misrepresentations to its detriment.

¶17 Title Management contends that the proposed negligent misrepresentation claim "clearly targets the title commitment representations" and could not be read to refer to any other representations made by Title Management. Were that the case, the proposed amendment would be futile under *Centennial Dev. Grp., LLC*, 233 Ariz. at 149, ¶ 10, 310 P.3d at 25. But we conclude that the claim is not that narrow. Nothing in the claim, or in the balance of the proposed second amended complaint, limits the alleged misrepresentations to representations set forth in a title commitment. Further, we reject Title Management's contention that title-commitment representations were the only representations that Touch Stone could have intended to describe. As an initial matter, Touch Stone disputed that it ever received an amended title commitment misrepresenting the applicability of Northern Trust's deed of trust. Touch Stone also expressly stated in its reply to the motion to amend that the proposed negligent misrepresentation claim was based on statements made during meetings, and the record includes an example of an e-mail communication from Title Management to Touch Stone discussing the status of Northern Trust's deed of trust.

¶18 Arizona has adopted the definition of negligent misrepresentation set forth in the Restatement (Second) of Torts § 552 (1977). *Mur-Ray Mgmt. Corp. v. Founders Title Co.*, 169 Ariz. 417, 422, 819 P.2d 1003, 1008 (App. 1991). Section 552(1) provides that

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Title Management contends that this standard could not be satisfied because it was not duty-bound to guide Touch Stone in its business transactions. But if Title Management voluntarily represented the condition of title, it assumed a duty to use reasonable care to ensure that the representation was accurate. *See Mur-Ray*, 169 Ariz. at 422, 819 P.2d at 1009 ("[A]lthough Minnesota Title may have had no duty to respond to [plaintiff]'s questions [regarding the effect of an assignment], when Minnesota Title chose to speak in its capacity as an escrow agent, it assumed a duty to use reasonable care when it did speak."); *Ariz. Title Ins. & Trust Co. v. O'Malley Lumber Co.*, 14 Ariz. App. 486, 492, 484 P.2d 639, 645 (1971) ("Arizona Title had no duty to speak or respond to the [third-party] contractors' inquiries [regarding the amount of available construction funds] at all. But if it chose to speak, we think that under all of the circumstances its business relationship with the contractors carried with it a duty to exercise reasonable care in making representations about presently ascertainable facts."). The superior court's denial of Touch Stone's motion to amend based on futility was error with respect to the negligent misrepresentation claim. The negligent misrepresentation claim was facially adequate.[1]

## II.    TITLE MANAGEMENT'S APPEAL

¶19 We now turn to Title Management's appeal from the denial of its application for attorney's fees. The superior court denied the application as untimely filed. Ariz. R. Civ. P. 54(g)(2) requires that a

---

[1] We express no opinion as to the merits of the claim, or as to the nature of any remedy available for the claim.

motion for attorney's fees be filed "within 20 days from the clerk's mailing of a decision on the merits of the case, unless extended by the trial court." Here, Title Management did not move or apply for attorney's fees until more than 20 days after the court filed its minute entry granting summary judgment on Touch Stone's last remaining claims. Title Management contends that the minute entry did not trigger the 20-day period prescribed by Rule 54(g)(2) because it was not a signed order, and was later followed by a signed judgment. This argument confuses a "decision on the merits" for purposes of Rule 54(g)(2) with an appealable order. Rule 54(g)(2) does not require a signed order, and Ariz. R. Civ. P. 58(g) in fact contemplates that claims for attorney's fees will be decided *before* a final judgment is entered. *See also* Ariz. R. Civ. P. 54(b), State Bar Committee Notes to 1999 Amendments. The superior court correctly determined that Title Management's fee application was untimely, and the court had no obligation to grant Title Management an extension of time.

## CONCLUSION

**¶20** For the reasons set forth above, we affirm the judgment to the extent that it dismissed Touch Stone's contract, fiduciary duty, good faith and fair dealing, and negligence claims. We reverse the judgment to the extent that it disallowed Touch Stone's proposed negligent misrepresentation claim, and we remand for further proceedings consistent with this decision. We affirm the denial of Title Management's application for attorney's fees in the superior court. In exercise of our discretion, we deny both parties' requests for attorney's fees awards on appeal.



Ruth A. Willingham · Clerk of the Court
FILED: MJT